J-S08037-18

2018 PA Super 60

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC WAYNE SMITH | : | |
| | : | No. 1219 WDA 2017 |
| Appellant | | |

Appeal from the PCRA Order June 1, 2017
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000054-2013

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    FILED MARCH 19, 2018

Appellant, Eric Wayne Smith, appeals from the order entered in the

Court of Common Pleas of Washington County denying his petition filed

pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-

9546.  After a careful review, we affirm.

This Court has previously set forth the facts underlying this case, in part,

as follows:

> In the late summer/early fall of 2012, [R.M.] (age 15),
> [K.C.] (age 12), and [S.D.] (no age of record) were 'ding dong
> ditching' in Lawrence, Washington County.  When [R.M.]
> approached 20 Third Street to ring the doorbell, [Appellant]
> approached the three juveniles from the side of the house and
> asked them what they were doing.  After [R.M.] explained the
> prank, [Appellant] offered to share some of his marijuana with the
> juveniles.  [R.M.] called his girlfriend, [J.C.] (age 15), to bring a
> pipe for smoking the marijuana.

_____

*   Former Justice specially assigned to the Superior Court.

When [J.C.] arrived, the four juveniles proceeded to a nearby park with [Appellant] to smoke the marijuana. While smoking together, [Appellant] told [R.M.] that he was gay, and wondered if [R.M.] knew anyone around [R.M.'s] age that was also gay. When the juveniles asked [Appellant] about his age, [Appellant] initially stated that he was 27, then changed it twice more during the conversation. Prior to leaving the park, [Appellant] provided his cell phone number to [J.C.] and [R.M.].

Over the next month, [J.C.] texted [Appellant] frequently to obtain marijuana. On occasion, [J.C.] would bring her brother, [K.C.], with her to pick up the marijuana at [Appellant's] residence or smoke it there with [him]. [Appellant] lived a short walking distance from [J.C. and K.C.'s residence]. [K.C.] began to stop by [Appellant's] house alone to smoke marijuana. [Appellant] never charged the juveniles for the marijuana. On those occasions where [Appellant] would smoke with [J.C. and K.C.], it would always be outside his house.

One evening in the fall of 2012[,] [K.C.] stopped at [Appellant's] residence to smoke marijuana. [Appellant] invited him inside, and [K.C.] and [Appellant] smoked marijuana in [Appellant's] living room. [K.C.] asked [Appellant] how he knew he was gay. [Appellant] asked [K.C.] if he was gay, to which [he] responded he was bisexual. [Appellant] asked [K.C.] if he wanted to engage in sexual activity, and [K.C.] said no. Despite this refusal, [Appellant] fondled [K.C.'s] genitalia over his clothes. [K.C.] immediately stood up to leave, but [Appellant] grabbed his pant leg, causing [K.C.] to fall to the ground. [Appellant] threatened [K.C.], and told him that if he told anyone what happened he would kill him.

In December 2012, while admitted at Southwood Psychiatric Hospital, [K.C.] disclosed the incident to his therapists. Following a forensic interview and notification of law enforcement, [Appellant] was charged [with several offenses].

On August 23, 2013, the trial court held a nonjury trial after which it found [Appellant] guilty of [indecent assault, false imprisonment, corruption of minors, and terroristic threats]. On December 6, 2013, the trial court sentenced [Appellant] to a total of six to twelve years of incarceration. [Appellant] did not file any post-sentence motions in this case. On January 3, 2014, he filed a timely notice of appeal.

Commonwealth v. Smith, No. 42 WDA 2014, at 1-3 (Pa.Super. filed 11/17/14) (unpublished memorandum).

On direct appeal, Appellant indicated in his "Statement of Questions Involved" that he was challenging the sufficiency of the evidence supporting his convictions. However, in the argument section of his brief, he challenged solely the trial court's credibility determinations. Thus, concluding Appellant had improperly conflated weight and sufficiency of the evidence claims, and no relief was due,[1] we affirmed his judgment of sentence. See id. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on June 16, 2015.

On or about November 4, 2015, Appellant filed a timely pro se PCRA petition, and the PCRA court appointed counsel to assist Appellant. On September 14, 2016, PCRA counsel filed an amended petition, and on March 27, 2017, the matter proceeded to an evidentiary hearing. On June 1, 2017, the PCRA court filed an order denying Appellant's first PCRA petition in its entirety. Following the reinstatement of Appellant's PCRA appeal rights nunc pro tunc,[2] this appeal followed. The PCRA court directed Appellant to file a

_____

[1] Appellant did not raise his weight of the evidence claim in the trial court, and thus, it was waived on appeal.

[2] The Clerk of Courts failed to serve the PCRA court's June 1, 2017, order upon Appellant or his counsel. On July 19, 2017, Appellant filed a counseled second PCRA petition seeking the restoration of his PCRA appeal rights nunc pro tunc. Therein, Appellant averred that, on July 10, 2017, he discovered the PCRA

Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the PCRA court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues for our review:

1. Whether this matter is properly before this Court where [Appellant] filed a PCRA petition seeking nunc pro tunc reinstatement of his appellate rights after the Clerk of Courts failed to serve a final order?

2. Did the PCRA court err in finding that trial counsel was effective in advising [Appellant] to waive his jury trial rights and proceed nonjury and in failing to object to a defective on-the-record oral colloquy by Judge Borkowski?

3. Did the PCRA court err in concluding that trial counsel provided effective assistance by erroneously advising [Appellant] not to testify based on his prior criminal history, where [Appellant's] only crimen falsi crime was a conviction in 1987 and was inadmissible under Rule of Evidence 609 since the Commonwealth failed to provide notice under that rule?

4. Whether the PCRA court erred in determining that trial counsel was effective in failing to present evidence that [Appellant]

_____

court had denied his first PCRA petition; however, due to the breakdown in the court's operation, he never received notice of the order. Appellant admitted that the PCRA was the sole means through which he could have his appeal rights reinstated, and that his second PCRA petition was untimely filed. However, he sought to invoke the governmental interference and newly-discovered fact exceptions provided for in 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii). The PCRA court agreed with Appellant and granted his second PCRA petition, thus reinstating his right to appeal the denial of his first PCRA petition nunc pro tunc. We find no error in this regard. See Commonwealth v. Blackwell, 936 A.2d 497, 500 (Pa.Super. 2007) (holding that PCRA court's erroneous notice to petitioner amounted to governmental interference meeting timeliness exception to PCRA); Commonwealth v. Fairiror, 809 A.2d 396, 397 (Pa.Super. 2002) (holding all requests for reinstatement of appellate rights, including PCRA appellate rights, must meet the timeliness requirements or an exception thereto under the PCRA).

suffered from a hernia to show that it would have been physically impossible or extremely difficult for [Appellant] to have dragged the [victim] up the stairs as alleged?

5. Whether the PCRA court erred in holding that trial counsel was effective in failing to present various text messages sent by two of the witnesses who testified against [Appellant] that would have attacked their credibility, including messages that showed that the [victim] stole [Appellant's] wallet?

6. Did the PCRA court err in finding that trial counsel rendered effective assistance on direct appeal by inadequately arguing [Appellant's] sufficiency of the evidence claims where the evidence was insufficient to support the crimes?

7. Whether the PCRA court erred in determining that trial counsel was effective in declining to challenge the weight of the evidence in a post-sentence motion[?]

8. Whether, due to the cumulative errors of trial counsel, [Appellant] is entitled to a new trial?

Appellant's Brief at 4-5.[3]

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

Commonwealth v. Johnson, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (quotation marks and quotations omitted).

Furthermore,

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate

_____

[3] We have renumbered Appellant's issues for ease of discussion.

that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

Commonwealth v. Benner, 147 A.3d 915, 919–20 (Pa.Super. 2016) (quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

Johnson, 139 A.3d at 1272 (citations omitted).

In his first claim, Appellant argues the PCRA court properly reinstated his PCRA appeal rights nunc pro tunc. As discussed supra, we agree and, accordingly, we shall proceed to a review of Appellant's remaining issues presented.

In his second claim, Appellant argues trial counsel was ineffective in advising Appellant to waive his right to a jury trial and failing to object to the Honorable Edward J. Borkowski's defective on-the-record oral colloquy.

Initially, we note the following relevant legal precepts:

The right to trial by jury is enshrined in both the U.S. and Pennsylvania Constitutions. See U.S. Const. amend. VI; Pa. Const. art. I, § 6. The importance of the right is recognized by the procedural protections in Rule 620 of th[e]. . .Criminal Procedural Rules, which provides that:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620.

* * *

> The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. "The. . .essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." Notwithstanding the Rule's reference to a "colloquy on the record," the use of a written jury trial waiver form has been deemed sufficient in the absence of an oral jury trial waiver colloquy.

> A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional "right." Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted in absentia after the defendant fails to appear.

Commonwealth v. Mallory, 596 Pa. 172, 941 A.2d 686, 696-97 (2008) (footnote, citations, and quotation omitted).

In addressing Appellant's second issue, the PCRA court concluded there was no merit to Appellant's claim and/or counsel had a reasonable basis for his action. In this regard, the PCRA court specifically indicated the following:

- 7 -

[Appellant] alleges that counsel did not have a reasonable basis for advising [him] to waive his right to a jury trial, which thereby caused prejudice to his case. He also alleges that despite a comprehensive colloquy being conducted by [the Honorable Katherine] Emery, the original judge assigned to the case, [ ] Judge Borkowski's failure to perform a full colloquy on the record also caused him prejudice.

* * *

[Appellant] addresses the third element [relating to prejudice] of the [ineffectiveness] test, but [he] ignores the other two [elements]. He alleges that but for trial counsel's advice and the lack of an oral on-the-record colloquy in front of Judge Borkowski, he would have elected a jury trial. However, his claim fails the first and second elements of the [ineffectiveness] test: that [his] underlying claim—that he did not give a knowing and intelligent waiver—has any merit, and how counsel's performance was deficient.

Under a "totality of the circumstances" evaluation, it's clear that [Appellant] gave a knowing and intelligent waiver and was sufficiently apprised of his right to a jury trial. . . .[T]he existence of a written colloquy is considered prima facie evidence that the waiver was informed and voluntary. None of the cases submitted by [Appellant] hold that a defendant must be given a thorough oral colloquy on the record in front of every judge he faces. [Appellant] moved to waive his right to a jury trial on May 30, 2013, which was granted by Judge Emery. At the PCRA hearing, the [PCRA] court inquired with PCRA counsel whether he was contesting [Appellant's] waiver of jury trial in front of Judge Emery:

> THE COURT: Okay. So you're not contesting the validity of the waiver of the jury trial in front of Judge Emery; correct?
>
> [PCRA COUNSEL]: No, I am not.

[N.T., 3/27/17, at 63.] Therefore, on the strength of th[is] waiver alone, trial counsel's performance was sufficient.

Also, the additional measures taken by trial counsel to apprise [Appellant] of his right to a jury trial show that [Appellant] made a knowing and intelligent waiver. At the PCRA hearing, [Appellant] admitted to being counseled by his trial attorney on his right to jury trial:

- 8 -

[PCRA COUNSEL]: Did you and [trial counsel] discuss proceeding nonjury in front of Judge Borkowski?

[APPELLANT]: We discussed it. Because [trial counsel] told me that, you know it would be best to go, you know, first nonjury based on, you know, the fact that the victim was a child and my past history might come to play. Either I would open doors. And he said—told me that Judge Borkowski is a fair judge. And he didn't see no harm in my doing so. So I, along, you know, with the advice of my counsel, I went with Judge Borkowski nonjury.

Id. at 45. Trial counsel elaborated on the nature of his advice to [Appellant] regarding [Appellant's] right to a jury trial:

[ADA]: Okay. And you met with [Appellant] after your rehiring on July 11, 2015, and discussed with him whether or not he still wanted to waive his right to a jury trial; correct?

[TRIAL COUNSEL]: It is. Except it was July of 2013.

[ADA]: I am sorry. I misspoke. I said '15, didn't I?

[TRIAL COUNSEL]: Right. Just for the record.

[ADA]: Okay. So you did that?

[TRIAL COUNSEL]: Yes.

[ADA]: On multiple occasions?

[TRIAL COUNSEL]: Yes.

[ADA]: Okay. And when you did that, can I assume you went over the stuff you normally would at any time when you're going over a case with a client? You would discuss with him his right to pick a jury?

[TRIAL COUNSEL]: Yes.

[ADA]: His absolute constitutional right to have a jury?

[TRIAL COUNSEL]: Yes.

[ADA]: And to make the Commonwealth prove to the jury beyond a reasonable doubt each and every element of the crime?

[TRIAL COUNSEL]: Yes.

[ADA]: And for the decision to be unanimous?

- 9 -

[TRIAL COUNSEL]: Yes.

[ADA]: And that would also include who the jury pool would be made up of?

[TRIAL COUNSEL]: Yes.

\* \* \*

[ADA]: Do you recall [Appellant] discussing with you why he wanted a nonjury trial prior to you being counsel?

[TRIAL COUNSEL]: I generally remember [Appellant] saying that he felt as though it would be more fair and that it would lead to a better decision. I also recall that he had a great deal of confidence in his decision to go that route. As to the specific reasons behind his confidence, and that being the fair and best, you know, fact finder, I don't specifically recall.

Id. at 32-34.

Also at the PCRA hearing, [Appellant] conceded that he was given a thorough oral colloquy in front of Judge Emery. His counsel elicited the following testimony:

[PCRA COUNSEL]: Do you recall being placed on trial in this matter?

[APPELLANT]: Yes, I do.

[PCRA COUNSEL]: Do you recall waiving your right to a jury trial?

[APPELLANT]: Yes, I do.

Id. at 44. Counsel for the Commonwealth fleshed out [Appellant's] answer, thereby proving that he understood the court's oral colloquy of his right to a trial by jury:

[ADA]: [Appellant], you heard [trial counsel] testify; correct?

[APPELLANT]: That is correct.

[ADA]: And you also said on direct examination that you waived your right to a jury trial before [Judge] Emery; correct?

[APPELLANT]: That is correct.

[ADA]: Did she explain to you your right to a jury trial?

[APPELLANT]: [Judge] Emery? Yes, she did. Yes.

[ADA]: So she went over all those things? It was a longer colloquy than Judge Borkowski about that?

[APPELLANT]: Yes, sir.

[ADA]: Okay. So you understood what you were giving up by waiving your right to a jury trial?

[APPELLANT]: Yes.

[ADA]: Okay. And you thought, well, [Judge] Emery is going to hear my case, I hear she's a fair judge, I would like her to make the decision. Is that a fair summary?

[APPELLANT]: Yes.

[ADA]: Okay. So then you go before Judge Borkowski. And [trial counsel] tells you. . .Judge Borkowski is fair, too.

[APPELLANT]: Yes.

[ADA]: Okay. And that he'll give you a fair shot?

[APPELLANT]: Yes.

[ADA]: Is that right?

[APPELLANT]: Yes.

[ADA]: And so, basically, for the same reasons you waived your right to a jury trial before Judge Emery, you waived your right to a jury trial before Judge Borkowski?

[APPELLANT]: That is correct.

Id. at 52-53.

[Appellant's] testimony at the PCRA hearing proves that he had a knowing and intelligent understanding of why he was waiving his right to a jury trial. He signed [a] waiver of the right to a jury trial, which was accepted following [an] oral colloquy on the record, is prima facie evidence of a knowing and intelligent waiver. Moreover, even if the waiver is deemed insufficient, the oral testimony of [Appellant] and trial counsel make it clear that [Appellant] believed that given the nature of the charges, he would have a more fair trial where the fact-finder is the judge. Therefore, applying the [merit prong] of the [ineffectiveness] test, [Appellant] fails to show that his underlying claim, that he did not give a knowing and intelligent waiver of a jury trial, has any merit.

- 11 -

Similarly, applying the second element of the [ineffectiveness] test, trial counsel testified that, in his experience, crimes of sexual violence inflame the jury and prejudice [a defendant]:

[ADA]: But do you recall discussing with him the fact that if you presented the case before a jury, you felt that they could be, let's say, blinded or inflamed by the underlying allegations of the Commonwealth; whereas, a judge, and specifically Judge Borkowski, who has significant experience in criminal cases, would not let that affect his judgment?

[TRIAL COUNSEL]: Exactly, I think that I've experienced on several occasions jurors who are offended by the mere nature of the allegations and turned off by the mere nature of the allegations. And then, frankly, they start to visibly size up your client. You can see it happening.

Id. at 34. Clearly, trial counsel had valid reasons to advise [Appellant] to not purse a jury trial. He reasoned that [Appellant] would receive a more fair trial in front of a judge than a jury and gave that reasoning to his client, who, as shown in the aforementioned testimony, agreed.

Taking all of the evidence into consideration, [Appellant] fails the first and second elements of the [ineffectiveness] test. In regard to the first, [Appellant] had a clear understanding of why he was waiving his right to a jury trial, he was given a thorough oral colloquy in front of the first assigned judge, he was counseled by his trial counsel, and the second assigned judge gave a brief oral colloquy. In regard to the second prong, trial counsel gave sound reason[s] for why he advised [Appellant] to waive his right to a jury trial: juries often prejudge [defendants] who are charged with violent sex crimes and have difficulty setting aside their emotions.

PCRA Court Opinion, filed 6/1/17, at 7-12.

We agree with the sound reasoning of the PCRA court, and accordingly, we conclude Appellant is not entitled to relief on this ineffective assistance of counsel claim.

In his third claim, Appellant contends trial counsel was ineffective in advising him not to testify based on his prior criminal history/bad acts. Appellant specifically contends that counsel inaccurately informed him that, if he testified, he could be impeached with his prior criminal history. Appellant contends that, absent this advice, he would have testified at trial.

It is well-settled that:

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

Commonwealth v. Nieves, 560 Pa. 529, 746 A.2d 1102, 1104 (2000) (citations omitted).

During the PCRA hearing, trial counsel testified as follows regarding his advice to Appellant as to his right to testify:

> [PCRA COUNSEL]: And do you recall whether [Appellant] testified during his trial?
>
> [TRIAL COUNSEL]: He did not.
>
> [PCRA COUNSEL]: And can you tell us what advice you gave to [Appellant] regarding his decision to testify or not testify?
>
> [TRIAL COUNSEL]: Yes. Some of the advice is advice that I give to any client who may be going to trial or his going to trial. And that is that it's up to him as to whether or not he testifies.
>
> I tell clients that they have certain decisions that are completely within their domain and not mine. And those would include whether or not to go to trial. If they go to trial, whether it's a jury or a bench trial. . . .And whether or not they would testify at trial. So I would tell him that ultimately it's up to him.

I discussed with [Appellant] whether he wanted to testify at trial. We had fairly extensive conversations about that. By "fairly extensive conversation," I don't mean hours. I mean, that they went on for a significant amount of conversation.

I offered my opinion. And my opinion was that he should not testify. Although I did tell him, as I would tell any client, that they can always change their mind up until we close our case in chief. That that right remains with them until we close our case in chief.

Did you ask why did I tell him or just whether I told him—I suggested?

[PCRA COUNSEL]: I asked whether—and I think I may have asked why.

[TRIAL COUNSEL]: Would you like me to elaborate on why?

THE COURT: I certainly would.

[TRIAL COUNSEL]: Okay. Thank you. I didn't want to answer something that wasn't asked.

[PCRA COUNSEL]: That would have been my next question.

[TRIAL COUNSEL]: Okay. I suggested that he did not testify primarily-well, there's what I told him and there's also what I fully thought. I didn't want to irreparably damage my client's relationship by him thinking that I was insulting him. So sometimes I give them a softer version of what I think.

But, essentially, I informed him and thought that he would not make a good witness. In my judgment in talking with him on multiple occasions at the jail, he was not a good communicator. He was not a good speaker. And it would affect his credibility.

He speaks very fast. He has trouble staying on track. And in cases like this, with a child sexual assault where you have a he said, he said, if you elect to take the stand, you have to be a very good witness. Once you take the stand, you are opening up yourself to giving the Commonwealth greater facts towards their proof beyond a reasonable doubt.

I thought [Appellant] would do that by being a poor witness, by being a poor communicator, and lacking some credibility.

By lacking credibility, I mean that—I think that if you don't directly confront those facts which are alleged against you, then that lessens your credibility. And I thought that [Appellant] had that problem in this case.

And then once that happens, then your lack of credibility becomes [the] Commonwealth's evidence for proof beyond a reasonable doubt.

I thought the victim in this case, by comparison, had serious challenges to his credibility. So why undermine our attack on the victim's credibility by putting on a less than credible defendant in this case.

That was the primary reason why I advised against him testifying at trial.

[PCRA COUNSEL]: That was the primary reason, but it wasn't the reason you told him because you didn't want to damage your relationship?

[TRIAL COUNSEL]: No. I did mention to him that I thought he would not make a good witness.

[PCRA COUNSEL]: Okay.

[TRIAL COUNSEL]: I'm just saying that the way I just expressed it to you is probably not entirely consistent to what I expressed— the way I expressed it to him.

N.T., 3/27/17, at 10-13.

Trial counsel further testified that Appellant informed him he had a hernia and desired to use that as a defense. Id. at 18. Trial counsel explained:

I also thought that—I was concerned that [Appellant]— throughout our conversations—the manner in which he would raise this before the judge.

For example, he had attempted to show me, on more than one occasion, the hernia, which I believe is in a private, if not genital area. And in a case of this nature, a child sexual assault, there is a concern that your client—that [Appellant], when they testify, might testify, act, and behave on the stand in a manner consistent with which they are charged. That they might not understand boundaries. They might act inappropriately.

I had a real concern in this case that [Appellant] would get on the stand and insist upon showing this to the court in a way that would appear to not only be inconsistent—or inappropriate

- 15 -

with court decorum, but might also demonstrate him to Judge Borkowski as somebody who doesn't understand normal human social boundaries and possibly normal sexual boundaries.

So there is a concern that he would act in a way that was too consistent with what he was charged, and I wanted to avoid that. And that was also based upon my overall conversations with [Appellant] and my judgment with him as a potential witness.

Id. at 19.

Trial counsel confirmed that he was also concerned that Appellant might "open the door" for him to be impeached with his prior crimes and/or bad acts; however, trial counsel testified this was not a prevailing concern in this case. Id. at 16. Rather, trial counsel indicated "the primary concern with him was that I just did not think he would be a good witness, and I thought he would be a poor witness for us." Id. Trial counsel testified that, although he had no specific recollection of discussing specific past crimes relative to Appellant, he could "say with confidence that [he] did not tell [Appellant] to not testify because of a 1987 retail theft conviction." Id. at 17.

Appellant, on the other hand, testified at the PCRA hearing on direct-examination that it was his intention to testify and he would have done so if trial counsel had not told him his prior bad acts, including his past homicide or 1987 theft conviction, could be introduced if he testified. Id. at 46-48. However, upon cross-examination by the ADA, Appellant admitted that trial counsel informed him that he believed Appellant should not testify because he would not "be a good witness" or "come across [as] credible." Id. at 63.

Based on the aforementioned, the PCRA court found trial counsel's testimony to be credible and determined "[Appellant] was advised that the main reason he shouldn't testify is because he would make a bad witness." PCRA Court Opinion, filed 6/1/17, at 15. Further, the PCRA court noted that trial counsel testified he advised Appellant not to testify, in part, because he had concerns that Appellant would act inappropriately as it related to his hernia, which was located in Appellant's private area, thus demonstrating to the trial court that he lacks appreciation for "normal human social boundaries and possibly normal sexual boundaries." Id. at 19.

The PCRA court concluded "[Appellant's] allegations that trial counsel advised him not to testify based on his criminal history is without merit. While trial counsel credibly testified that 'prior bad acts,' not [Appellant's] criminal history, were mentioned, [Appellant's] recollection of their discussions are tentative and lack credibility." Id. at 16. Further, the PCRA court concluded "[t]he testimony produced at the PCRA hearing demonstrates that trial counsel did not advise [Appellant] not to testify because of his criminal history[.] Trial counsel credibly testified that the primary concern was [Appellant's] poor presentation as a witness, which [Appellant] admitted was communicated to him." Id. at 18. Thus, the PCRA court found no merit to Appellant's underlying claim. Id.

We are bound by the PCRA court's credibility determinations. See Johnson, supra. Moreover, we agree with the sound reasoning of the PCRA

court, and accordingly, we conclude Appellant is not entitled to relief on his ineffective assistance of counsel claim.

In his fourth claim, Appellant contends trial counsel was ineffective in failing to present evidence that he suffered from a hernia that made it physically impossible, or at least extremely difficult, for him to have dragged the victim up the stairs as alleged by the Commonwealth. We conclude Appellant is not entitled to relief.

In rejecting Appellant's claim, the PCRA court concluded, inter alia, that Appellant failed to prove he was prejudiced by the absence of the evidence at trial. Specifically, the PCRA court relevantly indicated the following:

> [Appellant] alleges that the evidence of the hernia would have "significantly called into question the heart of the [victim's] claims" and "certainly would have led to a reasonable probability of a different outcome[.]" His logic is that if evidence of a hernia was presented, he would not have been able to engage in the acts, [which he was] accused of, and would have been acquitted thereof. However, in order to demonstrate prejudice, he must prove that the outcome of the trial would have been different.
>
> The court finds that presentation of the evidence of [Appellant's] alleged hernia would not have changed the outcome of the case. [Appellant] was found guilty [on] five [counts]: false imprisonment, 18 Pa.C.S.A. § 2903(a), terroristic threats, 18 Pa.C.S.A. § 2706(a)(1), corruption of minors, 18 Pa.C.S.A. § 6301(a)(1)(i), corruption of minors, 18 Pa.C.S.A. § 6301(a)(ii), and indecent assault, 18 Pa.C.S.A. § 3126(a)(8). However, he was acquitted of the two most serious felony sex offenses: sexual assault, 18 Pa.C.S.A. § 3124.1, and statutory sexual assault, 18 Pa.C.S.A. § 3122.1. Based on the testimony of his physical limitations as a result of the hernia, [Appellant] could [still] have performed the acts of which he was convicted. Only the two crimes he was acquitted of might have required [Appellant] to have been without the alleged hernia. Thus, even if evidence of the alleged hernia had been presented, it would not have affected the outcome of the case.

PCRA Court Opinion, filed 6/1/17, at 20-21 (citation to record omitted).

We agree with the sound reasoning of the PCRA court, and accordingly, we conclude Appellant is not entitled to relief on his ineffective assistance of counsel claim. See Commonwealth v. Johnson, 600 Pa. 329, 966 A.2d 523, 533 (2009) (holding a petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (quotation marks, quotation, and citation omitted)). Here, the record reveals that, aside from the testimony related to Appellant dragging the victim up the stairs, there was extensive testimony establishing that Appellant committed the crimes for which he was convicted. Thus, the PCRA court properly conclude that, even if counsel had introduced the evidence that Appellant had a hernia, there is no reasonable probability that the introduction of such evidence would have altered the outcome of the trial. Thus, Appellant is not entitled to relief on this claim. See id.

In his fifth claim, Appellant contends trial counsel was ineffective in failing to present various text messages, which two Commonwealth witnesses sent to Appellant. He contends the text messages would have impeached the witnesses' credibility. Specifically, he alleges:

> These text messages would have demonstrated that the [victim's] sister, [J.C.], who testified against [Appellant], repeatedly lied to [Appellant] about her age as did her boyfriend, [J.M.], who also testified against [Appellant]. The text message evidence also would have revealed that the [victim] had stolen [Appellant's]

wallet and could have led to the admission of [the] evidence that the [victim] called [Appellant] a racial epithet and said that he was going to make a false allegation against [Appellant].

Appellant's Brief at 29.

In rejecting Appellant's claim, the PCRA court found there was no merit to Appellant's underlying claim that such text messages existed. Moreover, the PCRA court concluded Appellant failed to prove he was prejudiced by the absence of the evidence at trial. Specifically, the PCRA court relevantly indicated the following:

> With regard to the first element [of the ineffectiveness test], [Appellant] has failed to show that there are text messages in existence that would have supported his case. Therefore, [Appellant] cannot prove that his claim has arguable merit. With regard to the third element, [Appellant] has produced insufficient evidence to prove that the evidence would change the outcome of the case.
>
> [Appellant] alleges that the text messages exist and that they would exonerate him, but he gave very few details concerning their substance or why he never presented them to his counsel. At the PCRA hearing, he was questioned by the Commonwealth regarding their substance and whereabouts:
>
> Q. Did you have the text messages?
>
> A. No, I can't subpoena—
>
> Q. No, I mean, you have them. You were interacting with them. Did you have the text messages?
>
> A. Well, I have them on my computer.
>
> Q. Did you ever tell [trial counsel], I have them on my computer?
>
> A. Yes.
>
> Q. So when he said he never heard—or remembered ever talking to you about text messages, that isn't true?
>
> A. No, it's not true.

Q. Okay. Are they still on your computer?

A. They should be on my computer.

Q. You never provided them to [PCRA counsel] or any other attorneys in these years that have passed, these text messages that would exonerate you?

A. Well, I've been trying for the longest time. I just recently got [PCRA counsel] about maybe five, six months ago.

Q. So where are the—the computer messages, they're still—

A. They're at my mom's house.

Q. Wouldn't it have been nice to give them to [PCRA counsel] to show them here today that you had them and it would exonerate you?

A. Well, my mom, she's hardly ever home anyway, you know. So—but like I said, they're there. I mean, they have been there, we wouldn't be having this conversation. I mean they're there regardless.

[N.T., 3/27/17, at 56-57.] Additionally, the [PCRA] court posed several questions to [Appellant] concerning the alleged texts:

THE COURT: Your computer is still there? Your mom still lives in the house?

THE WITNESS: Yes, ma'am.

* * *

THE COURT: These texts that you're claiming that [J.C.] sent to you, is this regarding her brother stealing your wallet? What exactly is in the texts that you think would have helped you?

THE WITNESS: Well, he had stolen my wallet, and I had text [J.C.] back, I said, your brother stole my wallet. And she said, well, let me go see.

So, she texted back, she says, yes, I do have it. She described everything, and I said, yeah, that's it. And she said, well, I'll bring it up. Do you have a cigarette?

I said, sure, no problem. I'll give you a cigarette. And she brought it up. And when she brought it up, I told [J.C.], I says, because I'm friends

with you, I'm not going to go to the police and get him in trouble, but I do not want that kid up here again. If he comes up here again, if I see him stealing anything, I will call the police and have him arrested.

Id. at 60.

In contrast, trial counsel testified that he didn't remember ever having a discussion with [Appellant] regarding any text messages:

Q. Did [Appellant] indicate to you that he had text messages from Commonwealth witnesses that somehow would allow you to impeach their credibility?

A. I don't recall that. Although—I also don't recall-unlike the hernia-

Q. Yes.

A.—that I was presented with that and elected not to go forward with it.

I recall discussing the hernia, thinking about whether we should pursue that via [Appellant] or records, and electing against that tactically. I don't have [a] recollection of having that same thought process about text messages pretrial.

Q. Meaning you don't recall it even being mentioned to you?

A. No. I don't recall. I just don't recall the issue before trial.

Q. Okay. After trial did he ever bring to your attention that he had some text messages that would somehow impeach the credibility of the Commonwealth's witnesses?

A. Not that I recall.

Id. at 36-37.

Based on the testimony, it doesn't appear that the text messages exist. Despite them supposedly being accessible on his mother's computer, [Appellant] never gave them to trial counsel or PCRA counsel. The only excuse he could muster is that his mom is "hardly ever home anyway." If [Appellant] truly believed the text messages would support his innocence, he certainly would have found time over the last five years to get the messages and present them to counsel.

In addition, it is not clear why [Appellant] believes these text messages would prove that he is innocent. Presumably, [Appellant] thinks that the text demonstrate that the victim stole money from him, which he believes would somehow impeach the victim or provide the victim a motive to fabricate the entire story. However, the court is not convinced. Without production of the text messages or more details regarding what they say, there is no way for the court to know whether the outcome of the case would have been different had they been introduced. There is no evidence other than [Appellant's] unbelievable and unsubstantiated claims that the texts exist. Moreover, even if the texts did prove that the victim stole from [Appellant], the court finds little credence to [Appellant's] assertion that the victim would fabricate such heinous acts in order to avoid being charged with [a] minor theft charge.

PCRA Court Opinion, filed 6/1/17, at 21-24.

We are bound by the PCRA court's credibility determinations. See Johnson, supra. Moreover, we agree with the sound reasoning of the PCRA court, and accordingly, we conclude Appellant is not entitled to relief on his ineffective assistance of counsel claim.

In his sixth claim, Appellant contends direct appeal counsel was ineffective in failing to properly brief on appeal his claim that the evidence was insufficient to sustain his convictions. Assuming, arguendo, Appellant has demonstrated that appellate counsel's performance was deficient in the manner in which he presented the issue on direct appeal,[4] we conclude

_____

[4] As Appellant accurately argues, on direct appeal, this Court concluded that appellate counsel "confused" a challenge to the sufficiency of the evidence with a challenge to the weight of the evidence. Thus, we concluded that appellate counsel's brief "raised sufficiency claims in which he presents weight

- 23 -

Appellant has failed to demonstrate the necessary prejudice. Accordingly, he is not entitled to relief on his ineffectiveness claim.

In reviewing sufficiency claims, we note:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Graham, 81 A.3d 137, 142 (Pa.Super. 2013) (quotation marks and quotation omitted).

_____

of the evidence arguments, [and thus] his sufficiency claims must fail." Commonwealth v. Smith, No. 42 WDA 2014, 6 (Pa.Super. filed 11/17/14) (unpublished memorandum) (footnote omitted).

- 24 -

Appellant avers the victim's testimony was so unreliable and contradictory that the entire verdict is based on no more than surmise or conjecture. Citing to Commonwealth v. Karkaria, 533 Pa. 412, 625 A.2d 1167 (1993), Appellant contends the victim's testimony falls within the inherently unreliable standard and, therefore, was insufficient to support the trial court's verdicts.[5] In this vein, Appellant notes that the victim did not

_____

[5] Appellant was convicted of indecent assault under 18 Pa.C.S.A. § 3126(a)(8), which provides, in relevant part:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> * * *
>
> (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126(a)(8).

He was convicted of false imprisonment under 18 Pa.C.S.A. § 2903(A), which provides, in relevant part, that "a person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S.A. § 2903(A). He was also convicted of corruption of minors under 18 Pa.C.S.A. § 6301(A)(1)(i) and (ii), which provides, in relevant part:

> (1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less

report the alleged assault until after he committed delinquent acts of burglary, and the victim failed to disclose initially that he returned to Appellant's home after the alleged assault.

While challenges based on inconsistent testimony generally implicate the weight of the evidence, in Karkaria, supra, our Supreme Court observed the following with respect to testimony and sufficiency of the evidence.

> Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the [finder of fact] and the verdict will not be disturbed if the [finder of fact] determines the evidence is worthy of belief.
>
> We have, however, made exception to the general rule that the [finder of fact] is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

Karkaria, 625 A.2d at 1170.

Contrary to Appellant's contention, we do not agree that the verdict was based on conjecture or that the victim's testimony was so inherently unreliable as to render the verdict unsupportable. The victim's delay in reporting the

_____

than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(A)(1)(i), (ii). Moreover, he was convicted of terroristic threats under 18 Pa.C.S.A. § 2706(A)(1), which provides, in relevant part, that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(A)(1).

- 26 -

sexual assault, as well as the fact he returned to Appellant's home after the sexual assault, were facts to be weighed by the trial court in determining the victim's credibility. This is not a case, such as Karkaria, in which the Commonwealth's case was based upon the testimony of a witness whose testimony was so inconsistent as to be completely irreconcilable, and the finder of fact would have had to guess which version of the story to believe. Accordingly, Appellant is not entitled to relief on his ineffectiveness claim.

In his seventh claim, Appellant contends trial counsel was ineffective in failing to file a post-sentence motion preserving his weight of the evidence claim for appellate review. We find Appellant is not entitled to relief.

It is well-settled that a weight of the evidence claim must be preserved in a motion before the trial court, and that this Court will only review the trial court's exercise of discretion in considering whether a new trial is necessary. See Pa.R.Crim.P. 607; Commonwealth v. Sherwood, 603 Pa. 92, 982 A.2d 483, 494 (2009).

With respect to a claim of ineffective assistance of counsel regarding the failure to file post-sentence motions, our Supreme Court has maintained the following:

> [There is a] distinction between errors which completely foreclose merits review and those which merely "narrow its ambit." Thus, [the Court] [has] held an attorney's failure to file a post-sentence motion preserving a particular sentencing claim "did not operate to entirely foreclose appellate review," but merely "waive[d] those claims subject to issue preservation requirements which were not otherwise properly preserved."

Commonwealth v. Rosado, 637 Pa. 424, 150 A.3d 425, 432 (2016) (citation omitted). "[C]ounsel's failure to file post-sentence motions [does] not fall within the narrow ambit of ineffectiveness claims requiring no finding of prejudice." Commonwealth v. Corley, 31 A.3d 293, 296 (Pa.Super. 2011) (citation and quotation marks omitted). Thus, in order to obtain relief on his ineffectiveness claim, Appellant must demonstrate that the verdict was against the weight of the evidence such that counsel may be deemed ineffective in failing to file the post-sentence motion. See Corley, supra.

Appellant's complaint that trial counsel was ineffective for failing to file a motion that the verdict was against the weight of the evidence is addressed to the discretionary power of the court. Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745 (2000).

> [O]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Commonwealth v. Konias, 136 A.3d 1014, 1022 (Pa.Super. 2016) (citations, quotation marks, and quotations omitted).

In developing his weight of the evidence claim, Appellant specifically points to inconsistencies between the victim's testimony and defense witnesses' testimony regarding whether Appellant's bedroom contained a bed with posts and whether the victim screamed during the assault. He also points

to inconsistencies in the victim's testimony as to whether Appellant covered the victim's mouth with his hand or duct tape during the assault.

The PCRA court rejected Appellant's underlying weight of the evidence claim, and we find no abuse of discretion in this regard. Specifically, to the extent there was inconsistency between the victim's testimony and Appellant's witnesses' testimony regarding the bed, as well as whether the victim screamed during the assault, the trial court was free to weigh the evidence and resolve any inconsistency in the evidence. See Widmer, supra. Further, to the extent the victim's testimony was inconsistent as to the manner in which Appellant covered his mouth during the sexual assault, the trial court was free to determine what impact, if any, the inconsistency had on the victim's credibility. See id. Accordingly, as there is no merit to Appellant's underlying weight of the evidence claim, Appellant is not entitled to relief on his claim that trial counsel was ineffective in failing to file a post-sentence motion preserving the claim for appeal.

Finally, Appellant argues that if this Court concludes he is not entitled to relief based on the prejudicial effect of any single error, he is entitled to relief because of the cumulative prejudicial effect of all of the errors set forth in his appellate brief. It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Commonwealth v. Johnson, 600 Pa. 329, 966 A.2d 523, 532 (2009). Accordingly, where ineffectiveness claims are rejected for lack of arguable

merit, there is no basis for an accumulation claim. Commonwealth v. Sattazahn, 597 Pa. 648, 952 A.2d 640, 671 (2008). "When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 161 (2012) (citations omitted).

In the instant case, to the extent we have individually rejected Appellant's claims of ineffectiveness based on a lack of prejudice, we now hold that they do not prejudice him when considered in the aggregate. See Commonwealth v. Busanet, 618 Pa. 1, 54 A.3d 35, 75 (2012).

For all of the foregoing reasons, we affirm the PCRA court's order.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2018