J-A18024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAWRENCE GAINES, | : | |
| | : | |
| Appellant | : | No. 115 EDA 2018 |

Appeal from the PCRA Order November 30, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0003210-2012

BEFORE:   STABILE, J., STEVENS*, P.J.E., and STRASSBURGER**, J.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 12, 2018**

Appellant Lawrence Gaines appeals from the order entered by the Court
of Common Pleas of Northampton County dismissing his petition pursuant to
the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.
Appellant raises several claims of the ineffectiveness of his trial counsel.  After
careful review, we affirm.

Appellant's underlying convictions are based on the following factual
background: on July 3, 2012, at approximately 6 a.m., William "Poncho"
Thompson (hereinafter "the victim") attempted to purchase drugs at a
residence known for the sale of controlled substances at 613 Ferry Street in
Easton, Pennsylvania.  When the victim initially knocked at the door, no one
answered.  Tony Williams, who was present in the home, heard the victim
knocking, but the owner of the home directed Williams not to open the door

_____
\*   Former Justice specially assigned to the Superior Court.
\** Retired Senior Judge assigned to the Superior Court.

because the house was "shut…down for the night."  Notes of Testimony (N.T.), 5/7/13, at 39.  When the victim continued to knock, Williams answered the door.  The victim begged Williams to be allowed inside and was waiving a $20 bill.  Williams refused to allow the victim inside.

Thereafter, the victim continued to persistently knock at the door of the residence. Appellant subsequently opened the door as he grew tired of the victim's knocking and did not want the police to be called.  Once Appellant and the victim's discussion became heated, Appellant exited the home and continued to argue with the victim.  Mr. Williams also exited the residence and attempted to calm the situation.

Appellant then "vicious[ly]" hit the victim, causing the victim to fall to the ground.  *Id*. at 46.  Appellant positioned himself over the victim, hit him several more times, and kicked him in the head.  When Appellant turned away, the victim was able to recover and grabbed a stick that Williams characterized as a "rail, like an old house rail."  *Id*. at 48.  The victim hit Appellant from behind with the stick, causing the stick to break in half and both men to fall to the ground.

Appellant got back on his feet, pulled a three-inch knife from his back pocket, and yelled "oh, it's like that?  Yeah, it's like that."  *Id*. at 50.  Appellant repeatedly stabbed the victim, who was still lying on the ground.  Williams pulled Appellant off the victim and both Williams and Appellant fled the scene.

Easton police officers responded to the crime scene after they were contacted by a couple who saw the victim lying on the roadway.  Officer Jamie

Luise observed the victim facedown in a large amount of blood running down Ferry Street. *Id*. at 25. Although the officers immediately called for emergency personnel, the victim died shortly after he was transported to the hospital.

Dr. Samuel Land, a forensic pathologist who performed the autopsy, determined that the victim sustained five stab wounds, including one stab wound to the right groin, which perforated the femoral artery. Dr. Land testified that damage to the femoral artery will quickly lead to large amounts of blood loss and ultimately cause death.

After Appellant was charged with the victim's murder, he proceeded to a jury trial. On May 9, 2013, the jury convicted Appellant of first-degree murder. On the same day, Appellant was sentenced to life imprisonment without the possibility of parole. Appellant filed timely post-sentence motions, which were subsequently denied. On September 2, 2014, this Court affirmed Appellant's judgment of sentence, and on February 17, 2015, the Supreme Court denied Appellant's petition for allowance of appeal.

On June 8, 2015, Appellant filed a timely *pro se* PCRA petition. Although the PCRA court appointed counsel, Appellant filed an amended *pro se* petition. Counsel attempted to file a petition to withdraw and a no-merit letter pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988). The PCRA court provided notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907 and denied Appellant's petition on October 9, 2015.

- 3 -

After Appellant filed a timely appeal, this Court vacated the PCRA court's order and remanded for further proceedings as counsel's petition to withdraw and *Turner*/*Finley* brief was never filed of record and did not appear on the docket. Further, this Court noted that there was no evidence that Appellant had been properly informed of his right to proceed *pro se* or retain new counsel upon PCRA counsel's attempted withdrawal of his representation. As a result, this Court remanded for PCRA counsel to properly file a copy of his petition to withdraw and no-merit letter.

Upon remand, the PCRA court appointed new counsel to represent Appellant, and on November 22, 2016, Appellant filed a counseled amended PCRA petition. After holding evidentiary hearings, the PCRA court denied Appellant's petition on November 30, 2017. Appellant filed a timely appeal and complied with the PCRA court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

A. [Trial counsel] was ineffective for failing to request that the Trial Court charge the jury that the stick was a lethal weapon.

B. [Trial counsel] was ineffective for failing to sufficiently meet with [Appellant] and advise him that he needed to testify to support his justification defense, imperfect self-defense, and heat passion defense [sic].

C. [Trial counsel] was ineffective for failing to file a post-sentence motion that included a challenge to the weight of the evidence.

Appellant's Brief, at 4.

In reviewing the lower court's decision to deny Appellant's PCRA petition, we examine whether the PCRA court's determination "is supported by the record and free of legal error." *Commonwealth v. Mitchell*, 636 Pa. 233, 244, 141 A.3d 1277, 1283–84 (2016) (citations omitted). In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in 42 Pa.C.S.A. § 9543(a)(2), which includes the ineffective assistance of counsel.

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012) (citing *Strickland v. Washington*, 466 U.S. 688, 687-91 (1984)). To prevail on an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 616 Pa. 1, 17, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001)). "A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 600 Pa. 329, 345–46, 966 A.2d

523, 532–33 (2009) (quoting **Strickland,** 466 U.S. at 694). The failure to satisfy any one of the three prongs will cause the entire claim to fail. **Sneed**, 616 Pa. at 18, 45 A.3d at 1106 (citation omitted).

Appellant first claims that trial counsel was ineffective in failing to request that the trial court charge the jury that the stick that the victim used to attack Appellant constituted a lethal weapon as a matter of law. Appellant's trial counsel had argued that the castle doctrine was applicable and contended that Appellant had no duty to retreat when the victim assaulted him with a lethal weapon.

At trial, the lower court read the following jury instruction, verbatim:

(iii) A defendant is not obligated to retreat from the place where he or she is attacked if:

A. The defendant has a right to be in that place;

B. The defendant is not at that time engaged in criminal activity. "Criminal activity" means conduct that is a misdemeanor or felony, is not justifiable under the Crimes Code, and is related to the confrontation between an actor and the person against whom force is used;

C. The defendant is not at that time illegally in possession of a firearm;

D. The defendant reasonably believes it is immediately necessary for him or her to protect himself or herself against death [or] serious bodily injury [or kidnapping or sexual intercourse compelled by force or threat]; and

E. *The person against whom the defendant uses force displays or otherwise uses a firearm or any weapon readily or apparently capable of lethal harm*.

Pa.S.S.J.I. 9.501A (Crim) (emphasis added).

- 6 -

We reject Appellant's claim that the trial court also should have informed the jury that the victim attacked Appellant with a stick that constituted a "weapon readily or apparently capable of lethal harm"; the trial court properly noted that this was a question of fact for the jury alone to decide. Trial counsel recognized that Appellant was not entitled to such an instruction and thus, appropriately argued that the jury should find the victim hit Appellant with a lethal weapon and introduced the stick as physical evidence for the jury's examination as to its weight and texture. **Commonwealth v. Spotz**, 610 Pa. 17, 111, 18 A.3d 244, 299–300 (2011) ("[c]ounsel will not be held ineffective for failing to request an instruction to which his client was not entitled"). As a result, we find no merit in Appellant's claim that counsel was ineffective in failing to request this instruction.

Second, Appellant contends that trial counsel was ineffective in failing to advise him that Appellant needed to testify on his own behalf to support his self-defense theory. It is well established that:

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Smith**, 181 A.3d 1168, 1179 (Pa.Super. 2018) (quoting **Commonwealth v. Nieves**, 560 Pa. 529, 746 A.2d 1102, 1104 (2000)).

In this case, Appellant's claim is meritless as he failed to demonstrate "counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *See Smith*, *supra*. The record does not contain any evidence that would suggest that Appellant's waiver of his right to testify was not knowing, voluntarily, and intelligent.

The trial court conducted an oral colloquy of Appellant on the record, during which Appellant acknowledged that he understood he had the right to testify, was not forced or threatened to testify, and was making an independent decision not to testify of his own free will. Our courts have emphasized that "a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." *Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa.Super. 2000).

At the PCRA hearing, Appellant's trial counsel testified that he had emphasized to Appellant that it was Appellant's decision alone to decide whether to testify on his own behalf. Trial counsel asserted that he explained to Appellant that he intended to set forth a self-defense theory and presented the advantages and disadvantages of Appellant taking the witness stand.

However, trial counsel admitted that he agreed with Appellant's decision not to testify as counsel had strategic concerns about the risks that Appellant faced in being subject to cross-examination. Had Appellant chosen to testify, the Commonwealth would have been able to impeach Appellant with his

numerous *crimen falsi* convictions and cross-examined Appellant about his conduct after the murder that suggested his consciousness of guilt, including Appellant's flight from the scene, his failure to seek help, his attempt to conceal the murder weapon, and his statements to police denying that he killed the victim in self-defense.

Moreover, trial counsel contended that the testimony of the Commonwealth's own witness, Tony Williams, had already provided circumstantial evidence to advance Appellant's theory of self-defense:

> As I recall, the testimony, which was largely from somebody else who was present at the scene; there was testimony as to the argument that preceded this assault, there was his description of the reaction of [Appellant] to that argument that occurred, there was testimony as to his reaction and his statements of annoyance at the incessant knocking at the door of this house by the victim looking to score drugs, there was his description of how the fight started, how it escalated, how [Appellant] disengaged from the physical altercation between he and the victim, and how it proceeded after the victim came back and hit him with the stick and how he reacted and what was said.
>
> And I believe that and other testimony was certainly sufficient to ask for the charge, and to make the argument, and to ask the Court – excuse me, ask the jury to infer that [Appellant] believed that he was in a fight for his life.
>
> A stick has been used against him by somebody who had – after essentially losing the first part of the fight, had gone away, returned with a weapon, the stick, attacked [Appellant], and knocked him to the ground.
>
> To the extent that, maybe in the cooler light of the courtroom, that this wasn't self-defense, I think it was still arguable that you can infer, and that the jury could understand; well now that I see the stick or I see what it is like, maybe it wasn't perfect self-defense, but given the circumstances, the time of the day, the time of the night actually, and all that leads up to it, you could see

where a person – and I asked the jury to understand, you could proceed, even if it turns out it was wrong, that you could have to use or be able to use deadly force.

N.T. PCRA hearing, 3/3/17, at 16-18.

As a result, trial counsel's proposed strategy was to rely on Williams's testimony to support Appellant's claim of self-defense and to avoid the risk of the prosecution discrediting Appellant on cross-examination if he testified. In light of the foregoing testimony, we cannot find trial counsel interfered with Appellant's right to testify or gave unreasonable advice that prevented him from making a knowing and intelligent decision to testify on his own behalf.

Lastly, Appellant claims trial counsel was ineffective in failing to raise a challenge to the weight of the evidence supporting his first-degree murder conviction. Specifically, Appellant claims that the Commonwealth failed to show he had specific intent to kill, contending that he did not use a deadly weapon on a vital part of the victim's body and asserting that he was only acting in self-defense. The Commonwealth argues that a weight of the evidence challenge would have been meritless and counsel cannot be held ineffective for failing to raise a meritless claim.

Our standard of review for a weight of the evidence claim is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be

granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

\* \* \*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013) (quotation marks, quotations, and citations omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003) (quotation marks and quotations omitted).

*Commonwealth v. Rodriguez*, 174 A.3d 1130, 1139–40 (Pa.Super. 2017).

In order to sustain a conviction for first-degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill, *i.e.,* the killing was performed in an intentional, deliberate, and premeditated manner. *Commonwealth v. Chamberlain*, 30 A.3d 381, 394, (Pa. 2011). Specific intent may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. [*Commonwealth v.*] *Smith*, 985 A.2d [886, 895 (Pa. 2009)]. Malice also may be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Houser*, 18 A.3d 1128, 1134 (Pa. 2011)

*Commonwealth v. Ramtahal*, 613 Pa. 316, 325–26, 33 A.3d 602, 607

(2011).

In this case, the Commonwealth presented evidence that Appellant brutally attacked the victim, who was lying on the ground. Appellant inflicted multiple stab wounds with a knife and continued to repeatedly stab the victim until Williams pulled Appellant away. The autopsy revealed the severity of the victim's wounds; in particular, the fatal wound was so deep that it penetrated the victim's muscle, completely severed the femoral artery, and traveled through the muscle again. The victim also sustained stab wounds to his buttocks that were approximately twice as deep as the length of the knife blade; the pathologist opined that Appellant had to use substantial force to inflict such wounds.

Upon our review of the record, we find the trial court did not abuse its discretion in rejecting Appellant's request for a new trial as it found the jury's verdict was amply supported by competent evidence. Appellant essentially asks this Court to reweigh the evidence in his favor; however, we may not substitute our judgment for that of the jury as factfinder, which was free to believe all, part, or none of the evidence. *See Ramtahal*, *supra*. As a result, we conclude that trial counsel was not ineffective in failing to raise a meritless challenge to the weight of the evidence.

For the foregoing reasons, we affirm the PCRA court's decision to deny Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/12/18</u>