J-S49040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS ALCIDES A. SANCHEZ | : | |
| | : | |
| Appellant | : | No. 726 EDA 2019 |

Appeal from the PCRA Order Entered February 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010979-2010

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 23, 2019**

Appellant, Carlos Sanchez, appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing as untimely his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court aptly sets forth the relevant procedural history and underlying facts, as follows:

> On April 24, 2012, petitioner Carlos Sanchez [hereinafter "Appellant"] entered a negotiated guilty plea on charges of third-degree murder, two violations of the Uniform Firearms Act, and possession of an instrument of crime.  Sanchez was sentenced to an aggregate imprisonment term of twenty (20) to forty (40) years.  He did not file a post-sentence motion or a notice of appeal.  Sanchez filed a pro se petition under the Post Conviction Relief Act ("PCRA") on November 14, 2012.  [The PCRA court] formally dismissed the petition on March 21, 2014.  On March 23, 2015,

---

[*] Former Justice specially assigned to the Superior Court.

the Superior Court affirmed the judgment of sentence. Our Supreme Court denied Appellant's petition for allowance of appeal on August 31, 2015.

Appellant filed the instant PCRA petition[, his second,] on September 6, 2017. [The PCRA court] issued a notice of intent to dismiss the petition, pursuant to Pennsylvania Rule of Criminal Procedure 907, on January 17, 2019. The petition was formally dismissed as untimely on February 15, 2019.

Appellant filed a notice of appeal on February 28, 2019. On March 6, 2019, the PCRA court ordered him to file a statement of matters complained of on appeal. Appellant filed his statement on March 18, 2019.

. . .

On September 21, 2009, at 7:48 p.m., Jose Rivera was shot in the area of 417 West Norris Street, which is in the intersection of Cadwallader and Norris Streets. Prior to this shooting, Appellant had been searching for Jose Rivera, the decedent, to collect a debt. During his search, Appellant observed Rivera in the area of Lawrence and Norris Streets. Appellant exited his Ford pickup truck and began to argue with Rivera about the debt. When Rivera said: "I don't owe you any money," Appellant pulled out a silver gun from his waistband and fired at least three gunshots at Rivera.

Although Rivera turned and began to run away, Appellant continued firing his gun until Rivera fell to the ground. After the gunshots were fired, Appellant entered his pickup truck and a second male, Javier Zayas, entered the passenger side of the pickup truck. Appellant then drove away from the scene with Zayas. Zayas left Appellant after they were a few blocks away from the scene.

When police arrived, they transported Rivera to Temple Hospital, where he was pronounced dead at 8:25 p.m. Dr. Blanchard, from the Office of the Medical Examiner, conducted an autopsy of Rivera's body. Rivera suffered one gunshot wound to the lower back, one gunshot wound to the groin, and one gunshot wound to the right thigh. Dr. Blanchard concluded to a reasonable degree of medical certainty that the cause of death was multiple gunshot wounds. Dr. Blanchard further concluded to a reasonable degree of medical certainty that the manner of death was homicide.

When Officer Rahill responded to the crime scene, he recovered three .40 caliber fired cartridge casings. He later submitted these fired cartridge casings to the Firearms Identification Unit for examination. Officer Stott examined three .40 caliber fired cartridge casings from the crime scene. After [conducting his examination,] Officer Stott determined to a reasonable degree of scientific certainty that they were fired from the same firearm. He further concluded that it was probable that the fired cartridge casings were ejected from a semi-automatic handgun.

Two eyewitnesses, Mike Seloski and George Adorno, observed the argument and subsequent shooting while they were on a basketball court in the area of Lawrence and Norris Streets. They later provided written statements to police and identified petitioner as the shooter after viewing a photographic array. Seloski further informed police that Zayas did not have a weapon and did not fire any gunshots at the decedent. Zayas also provided a statement to police, and he later testified at a preliminary hearing about this shooting.

PCRA Court Opinion, 4/10/19, at 1-2.

Herein, Appellant raises twelve issues on appeal that coalesce to challenge the PCRA court's February 19, 2019, order dismissing his serial PCRA petition as facially untimely despite his claims that he satisfied requirements to present exceptions to the time-bar. After careful review of the record, we perceive no merit to Appellant's challenge.

Our standard of review is well settled. "When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error." *Commonwealth v. Smith*, 181 A.3d 1168, 1174 (Pa.Super. 2018) (citation omitted). While a PCRA court's credibility determinations are generally binding upon us, we apply a *de novo* standard to our review of the court's legal conclusions. *See id*.

- 3 -

A PCRA petition, including a second or subsequent one, must be filed within one year of the date the petitioner's judgment of sentence becomes final, unless he pleads and proves one of the three exceptions outlined in 42 Pa.C.S.[A.] § 9545(b)(1). A judgment becomes final at the conclusion of direct review by this Court or the United States Supreme Court, or at the expiration of the time for seeking such review. 42 Pa.C.S.[A.] § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional; therefore, a court may not address the merits of the issues raised if the petition was not timely filed. The timeliness requirements apply to all PCRA petitions, regardless of the nature of the individual claims raised therein. The PCRA squarely places upon the petitioner the burden of proving an untimely petition fits within one of the three exceptions.

*Commonwealth v. Jones*, 54 A.3d 14, 16-17 (Pa. 2012) (some internal citations and footnote omitted).

Appellant concedes his present petition is facially untimely. He asserts, however, that his claim merits review because he pled, and proved, an exception to the PCRA's one-year time-bar in his PCRA petition. The PCRA provides three exceptions to its time bar:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A petitioner asserting one of these exceptions must file a petition within 60 days of the date the claim could have

first been presented. 42 Pa.C.S.A. § 9545(b)(2).[1] Exceptions to the time-bar must be pled in the petition, and may not be raised for the first time on appeal. *See Commonwealth v. Burton*, 936 A.2d 521, 525 (Pa. Super. 2007).

Appellant asserts he meets the requirements of 42 Pa.C.S.A. § 9545(b)(1)(ii), *i.e.*, the newly discovered fact exception to the PCRA's time-bar. The newly discovered fact exception "has two components, which must be alleged and proved. The petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007).

Due diligence requires the petitioner "take reasonable steps to protect his own interests." *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010) (citations omitted). However, it does not require "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances to uncover facts that may support a claim for collateral relief." *Commonwealth v. Shiloh*, 170 A.3d 553, 558 (Pa. Super. 2017) (citation omitted). As such, "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." *Id.* (citation omitted). "A petitioner must explain why he could not have

---

[1] Section 9545(b)(2) has been amended, effective December 24, 2018, to permit the petition to be filed within one year of the first date on which the claim could have been presented. The amendment does not apply to the present matter, as Appellant filed the petition in question on September 6, 2017.

obtained the new fact(s) earlier with the exercise of due diligence." *Monaco*, at 1080.

Further, section 9545(b)(1)(ii) "requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him" and that he could not have ascertained those *facts* by the exercise of "due diligence." *See Bennett*, at 1270–72. "The focus of the exception is on the newly discovered *facts*, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008).

Here, Appellant attached to his second PCRA petition an affidavit of Christina Rodriguez, in which she asserts that she witnessed the shooting of Jose Rivera. According to her statement, she performed CPR on Rodriguez until emergency personnel arrived, and she spoke to police at the scene, telling them she knew most of the "dudes" in the neighborhood but did not recognize the shooter. She claims no one ever contacted her afterward, although she learned "over the years that [Appellant] was accused of the shooting by the police." She "knew Carlos then and [she] can say one hundred percent that [Appellant] was not shooting at Jose." Rodriguez completes her affidavit by stating she would have testified for Carlos if anyone would have asked her, and by offering to testify in the future to what she witnessed.

Rodriguez's affidavit does contain a newly discovered fact—her alleged eyewitness account of someone other than Appellant murdering Jose Rivera. Even if we were to assume, *arguendo*, that Appellant could not have ascertained Rodriguez's eyewitness status prior to the expiration of the time

for filing, and that Appellant filed the present petition within 60 days of learning of Rodriguez's willingness to supply an affidavit, we decline to remand in this instance, for the PCRA court has appropriately deemed Rodriguez's statement "patently suspect" and not credible under the circumstances.[2] Rodriguez asserts she advised police someone from outside the neighborhood shot Rivera and she subsequently "knew" Appellant had been wrongly accused by police of the murder, and yet she says only that she would have testified at the time if anyone would have asked her.  In essence, therefore, Rodriguez elected to do nothing while claiming to "know" authorities were wrongfully accusing Appellant of a murder she witnessed.

This record does not exactly qualify Rodriguez's new statement as a witness recantation, which, it is well-settled, would permit a PCRA court to reject a newly-discovered fact statement without first conducting a hearing. *See Commonwealth v. Washington*, 927 A.2d 586, 597 (Pa. 2007) (acknowledging the expedited credibility analysis may apply to statements not technically "recantations").  Yet, the diametrically opposed positions she has taken with respect to speaking out as a potential witness greatly undermines her reliability and genuineness as a source of information in much the same manner as a recantation would.  By her own description of events, she has

_____

[2] We grant Appellant's application for relief asking this Court to take judicial notice of our recent *en banc* decision in *Commonwealth v. Brensinger*, ---A.3d----, 2019 PA Super 265 (Pa.Super. filed August 30, 2019) (holding public records presumption did not apply to defeat *pro se* prisoner's newly discovered facts claim; under facts, *pro se* prisoner exception under *Commonwealth v. Burton*, 121 A.3d 1063 (Pa.Super. 2015) applied).

gone from someone who remained indifferently silent while "knowing" an innocent man from her neighborhood was wrongly accused, to someone who now feels compelled to speak out, all without citing any reason for this unusual and drastic change in attitude. The court thus found her new statement neither credible nor persuasive evidence of innocence. Under the totality of evidence, we discern no error with the court's finding in this regard. Therefore, we agree that Appellant's petition does not qualify for a newly-discovered fact exception to the time-bar through the affidavit of Christina Rodriguez.

The PCRA court likewise rejected Appellant's remaining newly-discovered fact proffer, that he only recently discovered that Javier Zayas, the man who rode with him in his pickup truck after the shooting and who testified against Appellant at his preliminary hearing, had died prior to Appellant's guilty plea[3] and, thus, would have been unavailable to testify against him at trial.

First, the court opined, Appellant's failure to provide any reason why he could not have discovered Zayas' death sooner, particularly given Zayas' continued involvement in Appellant's criminal case at the time of his death, shows a lack of due diligence under Section 9545(b)(1)(ii), to the demise of his claim. Second, the court continued, even assuming Appellant had made the due diligence showing, he cannot show how Zayas' death would have

---

[3] Whether Zayas actually died before Appellant's guilty plea hearing is unclear, but we assume, *arguendo*, that Appellant's assertion in this regard is accurate.

mattered to his case, as his preliminary hearing testimony was damning and would have been admissible at Appellant's criminal trial pursuant to Pa.R.E. 804(b)(1). The record supports the court's conclusion in this respect, as Appellant provides no meaningful argument that he was prejudiced without knowledge of this fact. Accordingly, we find no error with the PCRA court's determination that Appellant's discovery of Zayas' death fails to qualify his untimely petition for an exception to the PCRA's jurisdictional time-bar.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/19