J-S11023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OTIS LEVERETTE | : | |
| | : | |
| Appellant | : | No. 999 EDA 2023 |

Appeal from the PCRA Order Entered March 23, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000617-2019

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2024**

Otis Leverette appeals from the order denying his Post Conviction Relief

Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Leverette argues his

trial counsel was ineffective and the PCRA court erred in failing to hold a

hearing. We affirm.

The underlying facts, as presented at the jury trial, are as follows.

On September 22, 2018, at 9:09 p.m., the Upper Darby Township
Police Department was dispatched to 16 N. State Road for "an
unconscious person in a car in reference to a possible overdose."
The caller, Jermaine Dobine, reported that he was an Uber driver,
that he picked up [Leverette] in West Philadelphia and that
[Leverette] was unable to exit from the vehicle. Mr. Dobine was
unsure if [Leverette] was high, drunk or if emergency medical
services were needed.

Officer William Redheffer was the first responding police officer
and was assisted on scene by officers Robert Bennett and Kevin
Donohue. When police arrived, they observed Mr. Dobine alone

_____

[*] Retired Senior Judge assigned to the Superior Court.

outside of his vehicle. Mr. Dobine advised police that the passenger was still inside the back of the vehicle. Officer Redheffer approached the rear-passenger side door and Officer Donohue approached the rear driver's side door. Officer Redheffer observed [Leverette] in the rear-passenger side seat with his head back and his eyes open. Officers Redheffer and Donohue both knocked on the car windows and, upon observing no response, opened the rear doors of the vehicle. Officer Redheffer immediately observed a black pistol in [Leverette]'s right hand with his finger on the trigger. The firearm was positioned between [Leverette]'s thigh and the rear-passenger side door.

Officer Redheffer retrieved the firearm from [Leverette]'s hand, made it safe[,] and then conducted a further search of [Leverette]'s waistband for weapons. Next, additional attempts were made to arouse [Leverette], including a sternum rub. [Leverette] woke up and was assisted out of the vehicle. [Leverette] was observed to be "uneasy on his feet, slurring his words, and stated that he had taken Xanax." [Leverette] was taken into custody and Xanax was found in the right pocket of his pants during a search of his person incident to arrest.

PCRA Court Opinion, filed 8/7/23, at 3-4 (citations omitted). The Commonwealth charged Leverette with possession of a firearm by a person prohibited, carrying a firearm without a license, and possession of a controlled substance.[1]

Leverette filed a motion to suppress. At a hearing, the Commonwealth presented the testimony of one of the responding police officers, who testified in line with the above. Leverette did not testify. Relying on *Commonwealth v. DeHart*, 745 A.2d 633 (Pa.Super. 2000), Leverette argued that the police had lacked reasonable suspicion to open the rear doors to remove him from the vehicle because they had not corroborated whether Dobine was, in fact,

_____

[1] *See* 18 Pa.C.S.A. §§ 6105, 6106; 35 P.S. § 780-113(a)(16).

- 2 -

an Uber driver, and because Leverette was not in apparent need of immediate medical treatment. **See** N.T., 4/18/19, at 41-42. He asserted that the 911 call was "ambiguous" and that the police spoke with Dobine for less than a minute. **Id.** at 35-36. The court denied the motion.

The case proceeded to a bifurcated jury trial, and the Commonwealth presented the testimony of all three responding police officers. When the court instructed the jury, it said the following regarding *mens rea*:

> Voluntary drug condition is not a defense to a criminal charge. A person who voluntarily uses drugs cannot become so drugged that he is legally incapable of committing a crime. There is another related rule. A defendant is not allowed to rely on evidence of his own drugged condition to prove that he lacked a mental state required for a particular crime. Keep this rule in mind when you're deciding whether the defendant had the intent and knowledge required for the crimes charged.

> Possession is an act if the possessor knowingly procured or received the thing possessed or is aware of his control thereof for a sufficient period to have been able to terminate his possession. As, I already told you, [Leverette] cannot be guilty of the crimes charge[d] unless at the time of the crime he had the intent and knowledge to possess Alprazolam and a firearm.

> This mental state can be actual or it could be imputed. Actual means that it was present in [Leverette's] conscious mind. Imputed means [Leverette] will be regarded as having the mental state even if it was not present in his conscious mind. Only consider whether to impute the required state of mind if you cannot find [Leverette] actually had it. In our case, if you determine that you must consider whether to impute the required state of mind you should proceed as follows. When each of you is deciding whether to impute or disregard the evidence of drug condition[,] deal with [Leverette] as if he had been sober and base your decision on the other evidence. This means that if you would be satisfied beyond a reasonable doubt by the evidence leaving out the evidence of drug condition, that the defendant has the required intent and knowledge, then you may conclude that the

required state of mind has been proven beyond a reasonable doubt.

N.T., 9/12/19, at 46-47 (spacing altered).

The court also gave the jury the following definitions for the firearms charges:

Possession of a firearm.[2] [Leverette] has been charged with the possession of a firearm. To find [Leverette] guilty of this offense you must find that [Leverette] knowingly possessed a firearm within the Commonwealth. The term "firearm" includes any weapon that is designed or may readily be converted to expel any projectile by the action of an explosive. For a person to "possess" a firearm, he must have the intent to control and the power to control the firearm.

Carrying a firearm without a license. [Leverette] has been charged with carrying a firearm without a license. To find [Leverette] guilty of this offense you must find that each of the following three elements has been proven beyond a reasonable doubt. First, that [Leverette] carried a firearm in a vehicle. A fireman is any pistol or revolver with a barrel less than 15 inches. To be a firearm, the specific object charged must either be operable, that is, capable of firing a projectile or, if inoperable, that [Leverette] had under his control the means to convert the object into one capable of firing a shot. You may, if you choose, infer that the object was an operable firearm from the way it appears and feels. Second, [Leverette] was not in his place of abode, that is, his home or fixed place of business. And, third, [Leverette] did not have a valid and lawfully issued license for carrying the firearm.

*Id.* at 50-51 (spacing altered).

The verdict slip asked the jury to find whether Leverette was guilty of carrying a firearm without a license and possession of a controlled substance. In relation to possession of a firearm by a person prohibited, it only asked the

_____

[2] The court did not alert the jury that this offense only applies to persons who are prohibited from possession firearms.

- 4 -

jury to find whether Leverette had had "physical possession or control of the firearm" on the date of the incident. ***Id.*** at 55.

The jury convicted Leverette of firearms not to be carried without a license and possession of a controlled substance. It also found that Leverette had had physical possession or control of the firearm. The trial court then, sitting without a jury, convicted Leverette of possession of a firearm by a person prohibited.

The court sentenced Leverette to an aggregate of 7½ to 20 years' incarceration. This Court affirmed on direct appeal. ***Commonwealth v. Leverette***, No. 44 EDA 2020, 251 A.3d 1246 (Pa.Super. 2021) (unpublished memorandum). The Pennsylvania Supreme Court denied allowance of appeal on November 3, 2021. ***See Commonwealth v. Leverette***, No 198 MAL 2021, 266 A.3d 448 (Pa. 2021).

Leverette filed the instant, timely PCRA petition on July 13, 2022. After issuing notice of intent to dismiss the petition without a hearing, and considering Leverette's response, the court dismissed it. This appeal followed.

Leverette raises the following issues:

1. Did the trial court err in denying the PCRA petition without first holding an evidentiary hearing to evaluate Leverette's credibility in person where Leverette alleged that trial counsel was ineffective in failing to call Leverette to testify at the motion to suppress hearing and Leverette's testimony, if believed, would have established that the police conducted an unconstitutional search that would have required suppression of the firearm and drugs?

2. Did the trial court err in denying the PCRA petition without first holding an evidentiary hearing to hear from trial counsel given that trial counsel's strategy of claiming that an Uber driver planted

a loaded gun in Leverette's hands and then called the police for no reason was objectively unreasonable given that trial counsel had significantly better strategies available to him?

3. Whether trial counsel provided the ineffective assistance of counsel in failing to request a jury instruction that the jury must find a voluntary act based on 18 Pa.C.S. § 301(a) given that Leverette was never seen with a firearm while awake and so the jury should have been instructed that it needed to find that Leverette consciously possessed the gun at some point in order to find Leverette guilty of the charges?

4. Whether trial counsel provided the ineffective assistance of counsel in failing to object when the trial court provided incorrect jury instructions for the VUFA § 6106 charge as well as a confusing verdict sheet which allowed the jury to convict Leverette for possession of a firearm without finding the existence of the required *mens reas* [*sic*] for the possessory offenses?

Leverette's Br. at 8-9 (suggested answers omitted).

"When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error." **Commonwealth v. Anderson**, 234 A.3d 735, 737 (Pa.Super. 2020) (quoting **Commonwealth v. Smith**, 181 A.3d 1168, 1174 (Pa.Super. 2018)). The PCRA court need not hold an evidentiary hearing if it "can determine from the record that no genuine issues of material fact exist." **Commonwealth v. McCready**, 295 A.3d 292, 298 (Pa.Super. 2023) (citation omitted).

A petitioner advancing a claim of ineffective assistance of counsel must overcome the presumption that counsel is effective. **Commonwealth v. Midgley**, 289 A.3d 1111, 1119 (Pa.Super. 2023). To do so, he must plead and prove "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for

- 6 -

the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **_Id._** (citation omitted).

## I. Motion to Suppress

Leverette first argues his trial counsel was ineffective for failing to call him to testify at the suppression hearing and to argue that the police lacked authority to conduct a warrantless search of his bag. He asserts he would have testified that he got in the Uber to go to a friend's house and had his firearm with him, concealed inside of a bag. He also had two Xanax inside of his shoe. According to Leverette, he fell asleep during the ride and when he awoke, the police were questioning him about the firearm. After he was arrested, and was in the police vehicle, he took the Xanax out of his shoe and left it on the floor of the police vehicle, where the police found it.

Leverette argues that if counsel had offered this testimony at the hearing, the court might have found his testimony credible and concluded that the officers must have searched the contents of his bag while he was sleeping and discovered the firearm. He argues the police had no legal authority to search his bag without a warrant. He maintains they had no reason to believe that he was engaged in any criminal activity or posed a threat to their safety, or that the contents of the bag would have been helpful in resolving a medical emergency. Leverette asserts that the police were quickly able to rouse him and that he did not require any medical treatment. He also maintains that if he had been holding the firearm while asleep, Dobine would have seen it and told the police about it when he called 911. Leverette contends that the PCRA

- 7 -

court should have at least held an evidentiary hearing to determine whether his testimony was credible.

The PCRA court rejected this claim. It reasoned that even if it had accepted Leverette's testimony as true, it would not have led the court to conclude that the police had illegally searched Leverette's bag:

> The purported testimony does not foreclose the idea that [Leverette] simply does not remember handling the firearm in the vehicle due to his voluntary intoxication on Xanax. . . . [Leverette] claims that he was asleep and woke up to being questioned about the firearm. Therefore, he does not actually know what occurred and his speculation about what may have happened while he was asleep or unconscious is not credible.

PCRA Ct. Op. at 11-12. The court also recalled that there was no testimony about any bag at the preliminary hearing, the suppression hearing, or the trial, and that "[t]he evidence presented at the motion to suppress was both compelling and accepted as credible by [the court]." *Id.* at 12-14.

The court did not err or abuse its discretion. To prove counsel was ineffective in connection with the motion to suppress, a petitioner is required to show the motion would have been meritorious. *See Commonwealth v. Johnson*, 179 A.3d 1153, 1160 (Pa.Super. 2018). Here, no evidentiary hearing was necessary, because even if the court had found Leverette's proffered testimony to be credible, it would not likely have affected the result of the motion to suppress. Leverette does not claim to have seen the police search his bag. Nor does he dispute that he took a Xanax before getting in the Uber. Leverette's testimony would not likely have changed the outcome of the proceeding, and counsel was not ineffective for failing to call him as a witness.

## II. Defense Strategy

Leverette next argues his counsel was ineffective for advancing an implausible theory of the case. Leverette asserts his trial counsel argued to the jury that Dobine must have planted the firearm on him, but that this theory made no sense because Dobine had no motive for planting the firearm and doing so would have been "incredibly risky" for Dobine. Leverette's Br. at 34. Leverette further maintains that counsel's theory did not explain why Dobine did not mention the firearm when he made the 911 call or when the police arrived. Leverette argues that trial counsel should have pursued another, more viable defense theory: that the police conducted an illegal search of Dobine's vehicle, found a firearm that Dobine had secreted, believed it belonged to Leverette, and falsely testified that they recovered it from Leverette's hand so that it would not be suppressed.

The PCRA court rejected this claim. It observed that trial counsel did not explicitly argue that Dobine had planted the firearm on Legette.[3] It recounted that instead, counsel emphasized several discrepancies in the Commonwealth's case regarding Dobine's purported involvement. The court noted counsel's arguments that Dobine "would have . . . had [to see] the gun if the gun was where [the police said] it was," but Dobine had not mentioned the firearm during the 911 call; the police never formally interviewed Dobine or confirmed he was an Uber driver; and Dobine had not testified at trial. PCRA

_____

[3] Counsel did argue that the firearm must have belonged to Dobine, without explicitly asserting that Dobine planted it. *See* N.T., 9/12/19, at 12.

Ct. Op. at 15 (citation to N.T. omitted). The court added that trial counsel had argued that the detective assigned to the case never testified; the police never investigated the person who the ATF report stated bought the firearm or any connection between that person and Leverette or Dobine; the police never investigated who rode in the car before Leverette; and the police never conducted any forensic testing on the firearm. *Id.* at 15-16. The PCRA court found counsel's defense strategy was reasonably designed to create a reasonable doubt for the firearm offenses. The PCRA court also noted that three police officers had testified consistently that Leverette had been holding the firearm in his hand. *Id.* at 17-18, 18 n.13.

We agree that Leverette has failed to prove that his trial counsel lacked a reasonable strategy. Further, we do not find Leverette's proffered strategy of lodging a more direct attack on the officers' credibility, without any evidence directly contradicting their account, would likely have resulted in a different outcome. *See Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011) (stating a petitioner alleging counsel's strategy lacked a reasonable basis must prove that an alternative strategy had "offered a potential for success substantially greater than the course actually pursued"). We accordingly find an evidentiary hearing on this issue would have served no purpose, and the court properly denied the claim.

### III. Jury Instruction on Voluntary Act

Leverette next argues his trial counsel was ineffective for failing to ask the court to instruct the jury that it could not find him liable for possessing

- 10 -

the firearm unless it found he did so voluntarily. He argues counsel should have requested an instruction that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act[.]" **See** 18 Pa.C.S.A. § 301(a). Leverette contends that if the jury had believed he was unconscious when someone planted the firearm on him, and had heard this instruction, it would not have found that he had possessed the firearm because there would have been no voluntary act.

This issue has no merit. Leverette cites the "general rule" under the statute that a voluntary act is required for criminal liability. **See** 18 Pa.C.S.A. § 301(a) (titled, "General rule").[4] However, the court instructed the jury, according to subsection (c) of that same statute, that possession is an act only "if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." **Id.** at § 301(c).

Here, Leverette alleges the jury could have found he was asleep when the firearm was placed in his hand and therefore had not performed a voluntary act when possessing the firearm. However, because the court duly instructed the jury that it could not find Leverette guilty of possession unless he had had knowledge or awareness of his possession of or control over the firearm, the jury could not have convicted Leverette if it had found the firearm had been planted on him while he was asleep. The addition of the "general

_____

[4] The omission to perform an act may also give rise to criminal liability. **See** 18 Pa.C.S.A. § 301(a), (b). An omission is not alleged here.

- 11 -

rule" instruction would therefore not have changed the outcome of the case and Leverette has failed to prove prejudice.

### IV. Jury Instruction on *Mens Rea* for Possession and the Verdict Sheet

Leverette's final argument is that trial counsel was ineffective for failing to object to the court's jury instruction on carrying a firearm without a license and to the question on the verdict sheet regarding persons not to possess a firearm. He argues that counsel should have asked the court to instruct the jury that the Commonwealth was required to prove that Leverette acted "intentionally, knowingly, or recklessly" with respect to the act of carrying the firearm. Leverette's Br. at 42. Leverette also argues the jury slip improperly asked the jury to find whether Leverette had "physical possession or control" of the firearm, without requiring the jury to also find that he had the requisite intent to do so. *Id.* at 44. He argues these errors were not harmless because "[t]he jurors could have believed that Leverette was simply in a car with a gun and therefore strictly liable for both [firearms] offenses because the trial court failed to require the jurors to find the correct *mens rea* for both statutes." *Id.* at 46.

This argument has no merit. The court instructed the jury that "[p]ossession is an act if the possessor knowingly procured or received the thing possessed or is aware of his control thereof for a sufficient period to have been able to terminate his possession," and plainly stated that Leverette "**cannot be guilty of the crimes charge[d] unless at the time of the**

**crime he had the intent and knowledge to possess . . . a firearm**." N.T., 9/12/19, at 46 (emphasis added).

The court thereafter gave no instructions that suggested that the jury did not need to find an intentional act to convict. While the court did not repeat the intent requirement when explaining the elements of carrying a firearm without a license, and this offense prohibits "carrying" rather than "possessing," the court had already instructed the jury that it must not convict Leverette without finding that he had had the intent, knowledge, or awareness required for possessing the firearm. The instructions as a whole did not allow the jury to conclude that there was no intent requirement and that it could convict Leverette on a strict liability basis.

With regards to possession of a firearm by a person prohibited, the court repeated that the jury could only find Leverette had had possession of the firearm if he had "knowingly possessed a firearm," and that to find Leverette had "possess[ed]" the firearm, it had to find he had had "the intent to control and the power to control" the firearm. *Id.* at 50. Accordingly, the jury's finding on the verdict slip that Leverette had had "physical possession or control" of the firearm required the jury to find Leverette had the requisite knowledge or intent. Leverette has failed to prove prejudice.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2024