J-A23036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
KELLY EUGENE PATZ　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　　　　:　　No. 1570 WDA 2024

Appeal from the PCRA Order Entered December 11, 2024
In the Court of Common Pleas of Warren County Criminal Division at
No(s):　CP-62-CR-0000334-2019

BEFORE:　PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　**FILED: April 10, 2026**

Kelly Eugene Patz appeals from the order entered denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. He claims trial and appellate counsel were ineffective. We affirm.

Patz was convicted of sexual offenses and other crimes against a minor, J.G. At Patz's jury trial, J.G. testified that he lived in Warren, Pennsylvania from 1999 to 2004, when he and his family moved to North Carolina. N.T., June 1, 2021, at 138. He testified that his stepfather was very mean and abusive toward him, and that his family was "very poor." *Id.* at 140. J.G. stated he met Patz when he was 10 years old,[1] after his brother D.N. introduced him. *Id.* at 142. He stated that D.N. was a year and a half to two years older than J.G. and his brother had started working for Patz by helping

---

[1] J.G. was born in the spring of 1990. N.T., June 1, 2021, at 181.

at fairs with inflatable bounce houses and rides. *Id.* at 143, 148. J.G. testified that initially Patz said J.G. could not work for him because he was too young, but eventually, when J.G. was 10 or 11, he helped with "a little patio in the back of [Patz's] house" on West Third Avenue. *Id.* at 144.

J.G. stated that after helping with the patio, he started working with the bounce house business. *Id.* at 148. J.G. testified that when he and Patz worked at locations "quite a drive away," they would have to leave early in the morning and J.G. would stay at Patz's house the night before on a pullout couch. *Id.* at 150. He stated that he would wake up in the middle of the night, and Patz would be "laying in the bed with [him]." *Id.* He said that Patz would be under the covers, and would "touch[ J.G.'s] genital area," underneath his clothes. *Id.* at 152-53. J.G. stated that when he said no, Patz "pull[ed] out a fifty or hundred dollar bill and asked what if I put this down there." *Id.* at 153. He stated that Patz did not offer money the first time, but did at later times. *Id.* J.G. said that he continued to work for Patz because Patz "treated [him] nicely, and he was kind and everything" and it got J.G. "away from [his] home life," which was "very mean and physically abusive." *Id.* at 155. He said Patz "acted and treated [him] as though he cared." *Id.*

J.G. testified he took the money Patz offered because he was poor and a kid and he "wanted to have the things that other kids ha[d]." *Id.* at 156. He said the abuse progressed, and Patz began putting his mouth on J.G.'s penis and asked J.G. to reciprocate, which he "declined." *Id.* He said Patz performed oral sex "[e]very opportunity. I don't know, tens of times." *Id.* at 157. J.G.

stated he worked for Patz for three years and that the abuse occurred whenever they were alone, which could be two to three times a week, and could be more during the summer because they were going to festivals, fairs, and birthday parties. *Id.*

J.G. testified that the abuse progressed to where Patz would put his penis between J.G.'s thighs and "would thrust until he ejaculated," and that this happened "many times over the years." *Id.* at 158. J.G. further stated that "there [were] a few times where [Patz] tried to stick his penis inside, which it penetrated to a point where it hurt." *Id.* J.G. stated he would "squirm away and say no and shut down and stop as soon as that would occur." *Id.* J.G. said Patz would put his fingers in J.G.'s anus before penetrating with his penis and other times. *Id.* at 160. He testified that Patz attempted to penetrate his anus "[t]wo or three times." *Id.* at 159.

J.G. testified the abuse occurred from the age of 10 until he moved to North Carolina in 2004. *Id.* at 160. He stated the acts occurred in Patz's West Third Avenue house, in a camper in the driveway of the home, and at a campground where the camper would be parked. *Id.* at 161.

J.G. testified that he also traveled to Disney World with Patz and Patz's family, and that abuse happened on that trip. *Id.* at 167-68. Further, after J.G. moved, Patz would call J.G. and continued to have an interest in J.G.'s life. *Id.* at 169-70. J.G. testified that Patz visited him in North Carolina when he was 14 years old. *Id.* at 170. He said Patz had a job driving tractor trailers,

which brought him to North Carolina, where he took J.G. for a ride in the truck and committed sexual acts on him. *Id.* at 170-71.

J.G. testified he came back to Warren to work for Patz a few different times, including when he was 17 or 18 and 21 and the sexual acts continued. *Id.* at 173-74.

On cross-examination, J.G. testified that no one noticed bruises from his step-father's abuse because he "d[idn't] really bruise that easily[, he] never got a black eye or anything like that, so there was not too much to see as far as [his] face," and "[he] would always wear clothes so you couldn't see anything on [his] body, and the ones on [his] head were covered by the hair." *Id.* at 195. Further, he acknowledged that he had told the police that he skipped school often, and stated that he skipped school "once or twice a week," but agreed the school records from his time in Warren showed only five absences in Grade 5, 11.5 absences in Grade 6, and no absences in Grade 7. *Id.* at 201-203.

The Commonwealth presented two Pa.R.E. 404(b) witnesses. One of them, J.M., testified about instances of abuse by Patz that occurred in Patz's Sixth Street house, in the camper, and at a storage unit. *Id.* at 63-64. He stated that he worked for Patz at fairs and that the abuse ended in 2001. *Id.* at 64, 80-81. J.M. testified that J.G. started working toward the end of the time that Patz had been assaulting J.M. *Id.* at 71-72. The other witness, J.G.'s brother D.N., testified about an instance in which Patz touched his penis when he and Patz were in Tennessee for a fair. N.T., June 1, 2021, at 106-112. D.N.

testified that he helped Patz set up the bounce houses at fairs. *Id.* at 101. He stated that he met Patz at Patz's variety store when he was around 12 years old.[2] *Id.* at 98-99. He further testified that he moved to North Carolina in April 2005, and stopped working for Patz in August 2004. *Id.* at 105. On cross-examination, when informed school records showed that he moved in April 2004, D.N. testified, "I mean, if I am a year off, then I'm a year off. It's a long time ago. . . . I'm trying to bring stuff back from 20 years ago. . . . Maybe it was 2002, '3." *Id.* at 119. He then reiterated that he began working for Patz when he was 12 years old. *Id.*

Detective Anthony Chimenti and Dr. Veronique Valliere also testified for the Commonwealth. The defense presented the testimony of Patz's former long-term girlfriend and two of his children testified.

Patz also testified. He stated that he started the bounce house business in 2001. N.T., June 2, 2021, at 312-13. He stated he met D.N. sometime in the summer of 2003 and met J.G. shortly after. *Id.* at 313. He said he did not do work on his patio until 2007, and said J.G. helped him at that time. *Id.* at 317. He testified he did not move into the house on West Third Avenue until 2002, and counsel used a timeline to refresh his recollection as to the time. *Id.* at 319-22. He further stated he did not get the camper until 2003. *Id.* at 324. Counsel used a bill of sale for a vehicle to refresh Patz's recollection as to the purchase of the camper. *Id.* Patz alleged that J.G. worked at only one

_____

[2] D.N. was born in the summer of 1988. N.T., June 1, 2021, at 117-18.

festival, which was in the fall of 2003. *Id.* at 325-26. Patz claimed that J.G. went on his family trip to Disney World in 2003 after Patz knew him for only three months. He claimed D.N. originally was supposed to go but decided not to, and that Patz and his girlfriend wanted help with their four children. *Id.* at 335-36, 368.

Patz testified that he opened a store called This and That in September 2001, and closed it the following summer to build the bounce house business. *Id.* at 311-12. Patz agreed that J.G. stayed at Patz's house in 2007. *Id.* at 337. Patz denied abusing J.G. *Id.* at 339. He claimed the last time J.G. called, Patz had refused to give J.G. money. *Id.* at 343. He further testified that in 2012 he told J.G. the allegations that J.M. had made against him. *Id.* at 344-45. On cross-examination, when asked if he had the deed to the West Third Avenue property, Patz stated "Actually, that – I have the land contract I bought. That was a rental property that we owned." *Id.* at 360.

The jurors were provided written copies of the elements of each charge that included the date ranges in which the amended information stated the offenses occurred – on or about September 1, 2000 through June 30, 2003, and on or about June 1, 2006 through September 30, 2007. Trial Ct. Op., filed Jan. 13, 2025, at 3.

While deliberating, the jury asked a question: "Are we bound by the dates listed with the charges?" N.T., June 2, 2021, at 483. The trial court informed the jury, over Patz's objection, that

> The qualifying language of "on or about" indicates that the dates set forth are approximate dates of the period in question.
>
> Please be mindful regarding the age of the alleged victim set forth in the elements of the offenses.

Jury Question, dated June 2, 2021.

The jury convicted Patz of two counts each of statutory sexual assault, sexual assault, corruption of minors, and endangering the welfare of minors.[3,4] The jury found him not guilty of all charges requiring the victim to be under 13 years of age. The court sentenced Patz to a total of 19 to 38 years' imprisonment. Patz filed a post-sentence motion challenging the weight of the evidence and claiming his sentence was excessive. The court denied the motion. Patz appealed. Relevant here, this Court concluded that he had waived his weight claim and that, even if it had not been waived, it lacked merit. This Court also found that he had waived the challenge to the sufficiency of the evidence for failure to raise it in his Rule 1925(b) statement.

In April 2024, Patz filed the instant PCRA petition. He claimed trial counsel was ineffective for not presenting allegedly exculpatory evidence and not asking for a limiting instruction on the Rule 404(b) testimony. He asserted that all prior counsel were ineffective for failing to properly preserve a

---

[3] 18 Pa.C.S.A. §§ 3122.1, 3124.1, 6301(a)(1), and 4304(a), respectively.

[4] The jury also found Patz guilty of two counts of unlawful contact with a minor. The PCRA court granted relief as to Patz's claim that counsel was ineffective for failing to challenge the corruption of minors convictions on statute of limitation grounds and vacated those convictions. N.T., Dec. 9, 2024, at 6. It also vacated a restitution order as to D.N. *Id.*

sufficiency claim, and that direct appeal counsel was ineffective for waiving his challenge to the trial court's response to the jury's question about the dates in the information.

At an evidentiary hearing, Patz testified that his trial counsel told him they did not need evidence for time frames after June 2003. N.T., Dec. 11, 2024, at 135. He said that counsel told him they "only defend on the charges that [he] was charged with during the timeframe that they alleged," and therefore when building his defense they "were going off the dates of up until June 30 of 200[3]." *Id.* at 116. He further testified that he and counsel discussed discovery and counsel was concerned that if they provided the prosecution with discovery, the Commonwealth would amend the charges to change the date range. *Id.* at 126. Patz testified that:

> [Counsel] said he doesn't have to give them discovery. What he'll do is he'll put me on the stand and he'll askme the question, for example, when did you purchase the camper? And he wanted me to give a vague answer, you know, like some time in 2003, and then he would hand me the document and introduce it into evidence that way to recollect my memory, and he told me that that would be introducing it into evidence.

*Id.* at 127. The court denied the petition. Patz filed an appeal.

Patz raises the following issues:

> i. Whether the PCRA court erred in finding that trial/appellate counsel were effective in failing to properly preserve Patz's sufficiency of the evidence claim and by addressing an issue not raised by Patz in his PCRA petition and using that rationale to deny Patz's sufficiency ineffectiveness claim?

- 8 -

ii. Whether the PCRA court erred in finding appellate counsel was effective in failing to adequately brief and present argument concerning the dates of the criminal information and improper reinstruction to the jury on the scope of the periods outlined in the criminal information?

iii. Whether the PCRA court erred in finding trial counsel was effective for not introducing and presenting documentary evidence relating to the purchase of [Patz's] home on West Third Avenue, his purchase of the camper and trucks, the work on the patio in 2007, and the purchase of bounce house and related rides?

iv. Whether trial counsel was ineffective in failing to request a jury instruction on 404(b) evidence/*res gestae* in connection with [J.G.'s] testimony about purported events in other states?

Patz's Br. at 6.

We review an order dismissing a PCRA petition to determine whether the order "is supported by the evidence of record and is free of legal error." **Commonwealth v. Cruz**, 223 A.3d 274, 277 (Pa.Super. 2019) (citation omitted). We will not disturb the PCRA court's findings "unless there is no support for the findings in the certified record." **Id.** "We apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Davis**, 326 A.3d 988, 992 (Pa.Super. 2024) (citation omitted).

Patz argues that counsel was ineffective. Counsel is presumed effective. **Commonwealth v. Pitt**, 313 A.3d 287, 293 (Pa.Super. 2024). To overcome this presumption, a petitioner claiming ineffectiveness must show by a preponderance of the evidence that:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there

is a reasonable probability that the result of the proceeding would have been different.

*Id.* (quoting *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*)).

Regarding the reasonable basis prong, we do "not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citation omitted). A petitioner shows that counsel's strategy lacked a reasonable basis where the petitioner establishes "that 'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Id.* (quoting *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006)).

For the prejudice prong, the petitioner must demonstrate "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id.* at 1127-28. "This does not mean a different outcome would have been more likely than not; a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Jones*, 210 A.3d 1014, 1019 (Pa. 2019) (cleaned up).

Patz first argues the trial court erred in finding his trial and appellate counsel were not ineffective for failing to preserve his sufficiency claim. Patz's Br. at 29. He points out that the PCRA court concluded that the claim had arguable merit and counsel did not have a reasonable basis for inadequately

briefing the insufficient evidence claim. He maintains that the court incorrectly stated that the petition alleged appellate counsel was ineffective for failing to preserve sufficiency and weight claims, when he did not claim ineffectiveness as to weight of the evidence. He states that "the PCRA court improperly conflated its evaluation of Patz's ineffectiveness sufficiency claim with an argument not raised," noting the court referenced two claims when finding counsel lacked a reasonable basis for raising the claims and the court stated it was not "a sufficiency of the evidence case." *Id.* at 31. Patz argues the court "improperly considered the claim Patz was making as relating exclusively to the weight of the evidence and not its sufficiency" even though he "unquestionably made a sufficiency of the evidence argument based on" *Commonwealth v. Karkaria*, 625 A.2d 1167, 1172 (Pa. 1993) (concluding evidence was "so unreliable and contradictory" that it was insufficient as a matter of law). *Id.* at 32.

Patz also challenges the PCRA court's reliance on Rule 404(b) witnesses to support the sufficiency analysis. He argues such testimony cannot be used to establish sufficiency, but rather can be considered only to prove malice, common scheme, intent, lack of accident or identity. He claims the court "considered the Rule 404(b) evidence in a prohibited manner in finding that it somehow established sufficient evidence." *Id.* at 32.

Patz argues that only J.G.'s testimony established the elements of the charged offenses and claims that "this case presents an even more compelling case than" *Karkaria*. *Id.* at 33. He claims J.G.'s testimony "was factually

impossible in myriad respects and in others was refuted by other evidence." *Id.* at 35. He points to J.G.'s testimony that he regularly skipped school, which was allegedly refuted by school records, and that the abuse occurred hundreds of times inside Patz's camper, but which Patz claimed he did not own from 2000 to 2003. Patz further claims that J.G. testified that Patz owned numerous amusements, such has a fire truck slide and bungee run, that he allegedly did not own at that time. Patz further challenges J.G.'s testimony that his stepfather would beat him daily, including slamming him into a freezer, placing him in a chokehold, and putting his head through a wall. He also argues J.G.'s testimony that the abuse occurred at a West Third Avenue house in 2000 and 2001 was incredible, as Patz testified he did not reside there until 2002. Patz also claims that J.G. testified that the abuse first occurred when he helped install a patio on the West Third Avenue home in 2000, but claims the patio was not installed until 2007 and claims it "is inconceivable that a ten-year old boy could operate a 150 to 175 pound compacter[.]" *Id.* at 36. He claims that J.G. testified "he was forced to submit to sexual intercourse over 250 times without any physical evidence and without any specific recollection as to a date certain upon which even one of the several hundred assaults occurred." *Id.* at 37 (emphasis removed).

Patz thus argues the evidence did not establish J.G. was abused between 2000 and 2003, and the jury did not believe any abuse occurred in that period as it found him not guilty of charges where the victim was under the age of 13. Patz further claims that the testimony of J.G.'s brother refutes the time

- 12 -

frame, as he allegedly testified he worked for Patz from 2002 to 2004, and that J.G. started working after him. According to Patz, if appellate counsel had properly preserved this sufficiency claim, he would have been entitled to relief.

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted).[5]

_____

[5]     A person commits statutory sexual assault "when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is either: (1) four years older but less than eight years older than the complainant; or (2) eight years older but less than 11 years older than the complainant." 18 Pa.C.S.A. § 3122.1(a).

A person is guilty of sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." ***Id.*** at § 3124.1.

A person is guilty of corruption of minors if the person "by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court." ***Id.*** at § 6301(a)(1)(i).

A person is guilty of endangering the welfare of a minor where the person is "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person," and the person "knowingly endangers the welfare of the child by violating a duty of care, protection or support." ***Id.*** at § 4304(a)(1).

Generally, arguments that a verdict cannot stand because of inconsistent testimony implicate the weight, not the sufficiency, of the evidence. **Commonwealth v. Smith**, 181 A.3d 1168, 1186 (Pa.Super. 2018). However, our Supreme Court has recognized an "exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." **Karkaria**, 625 A.2d at 1170 (citation omitted).

In **Karkaria**, the defendant was charged with rape and other offenses based on allegations that he sexually assaulted his stepsister between April 9, 1984, and September 19, 1984, while he was babysitting her. 625 A.2d at 1167, 1171. The defendant was 16 years old, and the complainant was 8. At trial, the complainant testified that the assaults "occurred on a regular weekly basis for over three years and occurred in exactly the same manner on each occasion." **Id.** at 1168. She said the incidents took place while her parents were out and defendant, who was her stepbrother, was caring for her, and although her brother was allegedly present, "he was never aware of what was transpiring[.]" **Id.**

The complainant was unable to provide details concerning any other instance of assault, recall having been penetrated, or specify when or how the assaults might have occurred. **Id.** at 1171. The complainant also testified that she never experienced pain during the sexual assaults and never objected to being in the defendant's care. **Id.** at 1168. On appeal, our Supreme Court explained:

> [F]or the jury in this case to have concluded that [the complainant] was forcibly raped by [the defendant], the jury would have had to conclude that [the complainant] had been forced to submit to sexual intercourse at least once between April 9, 1984 and September 19, 1984. Since there was no direct evidence of sexual intercourse between those dates, the jury in order to convict, would have had to conclude, beyond a reasonable doubt, that the [complainant] had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention that she was so victimized, and without any specific recollection by [the complainant] as to a date certain upon which even one of the several hundred assaults occurred.

*Id.* at 1170-71.

Importantly, the Court further pointed out that the complainant "insisted that the assaults only occurred when [the defendant] was babysitting and yet she also admitted that during the time period charged in the indictment (April through September 1984), [the defendant] no longer acted as the babysitter." *Id.* at 1171. It noted that the complainant "corroborate[d] [the defendant's] testimony that not only was he no longer the babysitter in 1984, but that he was rarely even in the family home during that time period." *Id.* The Court further noted that the complainant "offered one scenario, and one scenario only, for each of the 300 or more alleged incidents of sexual assault." *Id.* The Court also pointed out that the initial complaints to law enforcement "coincide[d] precisely with the pending reconciliation of [the complainant's] mother and stepfather" and the complainant had "repeated[ly] express[ed] hatred [of] . . . her stepfather." *Id.* (parentheses removed). The Court thus found the evidence insufficient.

First, we do not agree that the PCRA court addressed a weight claim rather than the sufficiency claim. Although the court discussed the weight of the evidence claim, it separately and distinctly addressed the sufficiency claim, finding Patz failed to establish he was prejudiced by the failure to preserve the sufficiency claim. N.T., Dec. 9, 2024, at 200-202.

The PCRA court concluded there was arguable merit to the sufficiency claim and there was no reasonable basis to not properly preserve the claim. It, however, found that even if he had preserved it, Patz would not be entitled to relief and therefore could not establish prejudice. N.T., Dec. 9, 2024, at 201. It found the evidence supported the convictions:

> We had a victim testify in detail about repeated instances of sexual abuse by [Patz]. It's one of the – it's a statutory provision that no evidence is needed in addition to the testimony of a victim of a Chapter 33 offense if the jury concludes beyond a reasonable doubt based upon that uncorroborated testimony that the offending occurred.
>
> So we have a victim testifying. The jury was free to believe/disbelieve all, some or part of the victim's testimony, and they were also free to conclude if satisfied that his testimony convinced them beyond a reasonable doubt that the offending occurred. So it's not a sufficiency of the evidence case.
>
> Over and above that, we had the two 404(b) witnesses who, again, the Superior Court indicated the Court committed no error in its rulings with regard to the two 404(b) witnesses.
>
> So we've got the victim's testimony, we've got the bad acts testimony and we have [Patz's] testimony.
>
> His own counsel concedes he didn't help himself. He wandered, he rambled. I could see why a jury would tend to disbelieve the testimony of somebody who simply cannot

give a straightforward answer to a question, but rather goes down these side streets and gives superfluous details on things he wasn't asked, to the point his own counsel redirected him a few times.

So the jury certainly had evidence regarding all elements of all the offenses charged and this simply isn't a sufficiency of the evidence case. So even if [appellate counsel] had properly briefed or asserted in his 1925(b) statement that issue regarding sufficiency, it's this Court's opinion that there is not a reasonable probability of a different outcome if the Superior Court was given an opportunity to weigh in on the sufficiency.

*Id.* at 201-02.

The record supports the PCRA court's findings and it did not err in finding Patz failed to establish prejudice. Here, J.G.'s testimony established every element of the crimes. Further, contrary to Patz's contention, J.G.'s testimony was not so contradictory that this case would fall into the limited exception outlined in *Karkaria*.

Patz's reliance on evidence he presented to support the alleged incredibility of J.G.'s testimony is misplaced. That Patz testified he moved into the Third Avenue house in 2002 does not mean that abuse could not have occurred at the house prior to that time. Patz acknowledged that he owned it during that period, allegedly as a rental property. Further, evidence that he purchased a camper in 2003 does not mean that he could not have owned a different camper prior to that date. Such testimony, as well as the other alleged inconsistencies – such as in the evidence of the abuse by J.G.'s step-father, J.G.'s school absences, and when Patz purchased certain bounce rides – were for the jury to consider and weigh. Patz fails to establish that J.G.'s

testimony was so inherently unreliable that the verdicts based on it were pure conjecture. Patz has not shown a reasonable probability that the outcome of the appeal would have differed, if appellate counsel had preserved the claim. Therefore, the court did not err in finding Patz failed to establish prejudice.

Patz next claims the PCRA court erred in finding his appellate counsel was not ineffective for failing to adequately brief and argue his challenge to the court's answer to the jury's question about the date ranges in the amended information. He maintains that the trial court's opening and closing instructions referenced dates alleged in the amended information – September 1, 2000 through June 30, 2003. He points out that the jury asked if it was bound by "the dates listed with the charges," and, over his objection, the trial court answered that it was not bound by the specific dates, the words "on or about" meant the dates were approximate dates, but that the jury needed to be mindful about elements of each offense with respect to the victim's age. Patz notes the jury acquitted him of all charges that required the Commonwealth to prove the victim was less than 13 years of age, but convicted him of charges that did not have age as an element and of those that required the victim to be under 16 or under 18.

Patz argues that the court's answer to the jury's question enabled it to improperly consider events that occurred after dates in the information. *See* Patz's Br. at 46. Patz maintains that he relied on the time frame charged when fashioning his defense. He asserts that his defense attempted to show the jury should not believe J.G.'s testimony because the period alleged was

inconsistent with when J.G. met and worked for Patz. He argues that the Commonwealth was bound by the period alleged in the amended information. He claims he had no notice that the time had been broadened and, if he had been made aware, he would have included evidence relevant to portions of 2004. He claims the instruction was not consistent with prior precedent because it permitted the jury to consider dates outside the period alleged in the charging documents.

Patz claims his due process rights were violated because the amended information was insufficiently specific and the jury was permitted to find Patz guilty based on acts committed in a time not set forth in the charges. He claims had he known the jury could consider abuse that occurred in the second half of 2003 and in 2004, he would have presented pay stubs showing that he worked as a truck driver and was on the road during those times. He cites an exhibit he presented at the PCRA hearing, Exhibit 11. ***See id.*** at 50. He asserts that the pay stubs contain "detailed information which establish that the abuse could have not taken place in the four months of 2004 before [the victim] and his family moved because Patz was on-the-road [sic] and traveling for his job as a truck driver." ***Id.***

This claim lacks merit. In its Rule 1925(a) opinion, the PCRA court explained that Patz failed to establish the prejudice prong of the ineffectiveness test:

> [Patz] argues that he was prejudiced by the jury instruction permitting the jury to consider times outside of the information. Specifically, [Patz] argues that had he

known that the jury would have been permitted to consider timeframes outside of the information, he had evidence to present to refute the allegations. PCRA counsel stated that because [Patz] was found not guilty "of every charge in which the Commonwealth says [the victim] was 13 years of age, under the age of 13 years old—that means that the jury considered a timeframe that wasn't 2000 to 2003 in finding him guilty of the remaining nine charges" which [Patz] concludes constitutes prejudice. PCRA Hearing Tr. December 11, 2024 at p. 190 ln. 20 — p. 191 ln. 3.

At the PCRA hearing, [Patz] testified as follows pertaining to a discussion he had with trial counsel:

PCRA Counsel: And did [trial counsel] or you ever discuss presenting any evidence concerning, say, June — or, say, July 1st, 2003, through whenever [the victim] moved in 2004?

Defendant: Yeah, evidence that I had for the later date timeframes, [trial counsel] told me we didn't need that. He told me that we only defend on the charges that I was charged with during the timeframe that they alleged, and the whole time building our defense and talking about the case, we were going off the dates of up until June 30 of 200[3].

PCRA Hearing Tr. December 11, 2024 at p. 116 ln. 4-13.

Thereafter, PCRA counsel submitted Petitioner's Exhibit 11 identified as copies of paycheck stubs from when [Patz] worked as a truck driver beginning in 2004. [Patz] argued that this type of proof would have been submitted had he been aware of the time frames to be considered in support of his defense. This argument is like that made by the defense in **Com v. Hacker**, 959 A.2d 380 (Pa.Super. 2008)[10].

[10] Reversed by **Com v. Hacker**, 15 A.3d 333 (Pa. 2011) on the sole issue of mistake of age/*mens rea*. The holding relevant to the argument herein is left undisturbed on reversal.

In **Hacker**, the defendant argued that a variance between the dates of the information and the dates presented in trial evidence prejudiced her because "not

knowing the appropriate dates meant she had no opportunity to determine if there were witnesses or other evidence that would buttress her claim of innocence." ***Id.*** at 390. Despite this argument, Hacker "ma[de] no attempt whatsoever to demonstrate to [the Court] that there actually were any such witnesses or items of evidence. Now aware of the time frame of [the victim's] allegation, she ma[de] no proffer of what witnesses or evidence she would have introduced had she been more aware of the dates before trial. She d[id] not claim or demonstrate that she would have had an alibi." ***Id.*** As such, Hacker failed to demonstrate the variance in her case could have misled her, impaired her particular rights, or surprised her and consequently, she did not show the variance entitled her to relief. ***Id.***

Here, to his credit, [Patz] did make the attempt to demonstrate to the [c]ourt one exhibit which he would have . . . admitted had [Patz] known of the timeframe to be considered. However, this flimsy (at best) singular exhibit and attempt to demonstrate an alibi does not rise to the sufficient level necessary to show how the variance entitles [Patz] to relief. No other witnesses or evidence was presented at the time of the PCRA hearing and [Patz's] testimony at the PCRA hearing that he had "evidence for other timeframes" is not sufficient to meet the burden required.

In analyzing the only evidence proffered by [Patz] at the hearing, this Court concludes that if this exhibit was added to [Patz's] other evidence presented at the time of trial, the result would remain the same. An exhibit that demonstrates [Patz] traveled and worked often does not provide a "slam dunk" alibi defense that he could have never, on or about the time frame alleged or permitted to be considered by the jury, committed the offenses in which he was accused. [Patz] fails to submit that the jury instruction misled him at trial, impaired a substantial right of his, or involved an element of surprise that prejudiced the defendant's efforts to prepare his defense.

Nevertheless, this [c]ourt's duty is to analyze whether there is "a reasonable probability of a different outcome at trial if not for counsel's error." This [c]ourt again returns to the conclusion that had appellate counsel properly argued

> the issue, the Superior Court would have discerned no abuse
> of discretion for the reasons described above and therefore,
> the third element of the ineffective counsel test is not met.

PCRA Ct. Op. at 14-16.

The record supports the PCRA court's conclusions and it did not err in finding Patz failed to establish prejudice. The pay stubs show that Patz worked as a truck driver in 2004, but do not show that Patz was away the entire first four months of 2004. The pay stubs are somewhat ambiguous, and Patz does not elaborate on the dates and times that he claims they show he was away. The pay stubs do not clearly establish the beginning and ending dates of many instances of Patz's work travel, or the times of day he would have come and gone from home on the days he left and returned. He simply argues that they offer him a blanket alibi for the entire period at issue.

Moreover, Patz's claim that the pay stubs "establish that the abuse could have not taken place in" the first four months of 2004 is untrue. **See** Patz's Br. at 50. The stubs seem to show that during many weeks, he was away the entire week, while in other weeks, he was away a few days, and in yet other weeks, he was not away at all. Indeed, the pay stubs afford him no alibi at all for the first three weeks of January 2004 or the last few weeks of March 2004. Furthermore, even during weeks they show he traveled, they do not show he left and returned at such hours that it would have been unlikely that he committed the crimes. Furthermore, the pay stubs do not establish any alibi

- 22 -

for the last half of 2003. Without a more complete explanation, we cannot say that Patz has carried his burden to show prejudice.[6]

Patz next argues the PCRA court erred in finding trial counsel was not ineffective for not introducing evidence regarding the purchase of Patz's home on West Third Avenue,[7] the purchase of his camper and trucks, the work on the patio in 2007, and the purchase of the bounce house and related rides. He claims counsel had no strategic basis for not introducing documentary evidence to support his defense. He claims he provided counsel such evidence of when he lived in the West Third Avenue house, when he purchased the camper and truck, and when he purchased certain bounce houses and related rides, and claims such documents showed J.G.'s timeline was impossible. He asserts counsel was ineffective for only using the documents to refresh Patz's recollection, rather than admitting them as evidence.

---

[6] The jury's acquittal of Patz of crimes requiring that the victim be under 13 years old does not equate to a finding that the jury disbelieved the victim's testimony about the time frame. *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012) (concluding "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence," and "even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal"). We further point out that J.G. turned 13 years old prior to June 30, 2003, which was the end date of the period charged. *See* N.T., June 1, 2021, at 181.

[7] The evidence was not related to the purchase of the West Third Avenue home, which he claims was rented until mid-2002. PCRA Petition at 10 n.7. Rather, it was related to the foreclosure on a separate residence. *See* PCRA Petition at Exh. 3, Complaint in Mortgage Foreclosure for Market Street Property; PCRA Petition at Exh. 4, Agreement of Sale for Market Street Property.

Patz argues counsel possessed the relevant documents or could have acquired them and had no reasonable basis for not presenting the evidence to the jury. He claims the court erred in stating Patz had testified to the same information he wished to present. He claims that J.G. and D.N. testified that he owned a truck, but maintains that he did not own it at the time and did not testify at trial as to when he purchased the truck. He further notes he did not testify as to employment records for 2004. He also claims that he testified as to the ownership of the house and camper, but the documents would have established that the testimony was credible.

The PCRA court concluded trial counsel had an objectively reasonable basis for not admitting the documents into evidence. At the PCRA hearing, counsel testified that Patz "provided him with 'lots of documents . . . some of the documents that were presented here probably were some.'" N.T., Dec. 11, 2024, at 67. Counsel further described that "[t]here were a lot of things [Patz] showed me that I didn't believe were relevant." *Id.* at 68. Additionally, Patz's son testified that, as it pertained to the documents, "I know before trial[, trial counsel] wasn't really focused on submitting them as evidence. He wanted to kind of just show them to my dad to recollect his memory I think was his game plan." *Id.* at 103.

Patz described what he believed trial counsel's strategic approach to be as follows:

> And there was a concern that after — like if we provide them
> with discovery, would they be able to say, okay, well, then
> we'll just change the dates? Because then that would take

away some of our defense, and he told me that in a case like this, he said he doesn't have to give them discovery. What he'll do is he'll put me on the stand and he'll ask me the question, for example, when did you purchase the camper? And he wanted me to give a vague answer, you know, like some time in 2003, and then he would hand me the document and introduce it into evidence that way to recollect my memory, and he told me that that would be introducing it into evidence.

*Id.* at 126-27.

The PCRA court concluded that counsel had a reasonable strategic basis:

It is clear that trial counsel's narrowing of the relevant evidence coupled with his trial strategy described by [Patz] and his son, above, was a strategic decision made after thorough investigation of law and fact. By this approach, trial counsel concluded that he would not have to give the Commonwealth the documents in advance but, by utilizing this method, would still permit the jury to take in the information.

PCRA Ct. Op. at 17. The record supports the PCRA court's finding and it did not abuse its discretion in finding counsel had a reasonable strategic basis for not admitting the documents.

We further conclude that Patz has not established prejudice. The evidence he relies on would not have been likely to result in a different outcome had it been admitted to the jury. That Patz's mortgage was foreclosed on a separate property in 2002 does not preclude the abuse from having happened at the West Third Avenue property, which he testified was a rental property. Further, that he purchased a camper in 2003, does not mean that he did not own a different camper prior to that date. In addition, the jury

heard Patz testify as to the various dates he allegedly purchased items or moved. Patz has not shown a reasonable probability of a different outcome.

In his last claim, Patz argues counsel was ineffective for failing to request a jury instruction on Rule 404(b) evidence/*res gestae* related to J.G.'s testimony about events in Florida, North Carolina, and Connecticut. He argues Pennsylvania lacks jurisdiction over out-of-state crimes, and that counsel should have asked the court to instruct the jury to not consider any testimony of out-of-state conduct and that the out-of-state testimony was only admissible as part of the history of the case. He claims his counsel did not have a reasonable basis not to ensure the jury was properly instructed and that he suffered prejudice because some of the out-of-state crime testimony was about events when J.G. was 13 and 14 years of age. He claims the court's rejection of this claim relied on a *non sequitur*: the evidence was admissible as part of the natural development and history of the case. He argues however that the instruction would have clarified for the jury that it could not find him guilty of the charges based on out-of-state conduct.

The court found that Patz failed to prove prejudice. It found the testimony was *res gestae* evidence, which "may be admissible 'when relevant to furnish the complete story or context of events surrounding the crime.'" PCRA Ct. Op. at 23 (quoting **Commonwealth v. Weiss**, 81 A.3d 767, 798 (Pa. 2013)). The court concluded Patz "fail[ed] to offer, and [it] cannot discern, how th[e requested] instruction would have caused a reasonable probability of a different outcome at trial." **Id.** It reasoned "[t]here [wa]s no

indication that the jurors, in their deliberation or ultimate conclusions of guilt or innocence, considered the abuse in other states." ***Id.***

The record supports the court's factual findings and it did not err in finding Patz did not establish prejudice. The evidence was admissible as *res gestae* evidence, and moreover, there was substantial testimony about crimes in Pennsylvania. He has failed to establish that the outcome would have been different had the trial court issued a limiting instruction.

Order affirmed.

President Judge Emeritus Panella joins the memorandum.

President Judge Emeritus Bender files a concurring and dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/10/2026